979 P.2d 1

**David Peter CALIK, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF YUMA, the Honorable Kirby Kongable, a judge thereof, Respondent Judge,**

**State of Arizona, Real Party in Interest.**

No. 1 CA–SA 97–0273.

Court of Appeals of Arizona,
Division 1, Department A.

July 21, 1998.

Review Granted May 25, 1999.

Ronald F. Jones, Yuma County Public Defender by Michael J. Perry, Deputy Public Defender, Yuma, for Petitioner.

David S. Ellsworth, Yuma County Attorney by Mark Edward Hessinger, Deputy County Attorney, Yuma, for Real Party in Interest.

Brown & Bain, P.A. by Paul F. Eckstein, John J. Tuchi, Phoenix, for Amici Curiae Arizonans for Drug Policy Reform and The People Have Spoken—SB 1373.

## OPINION

GRANT, Judge.

¶ 1 In 1996, Arizona voters adopted Proposition 200, thereby effecting changes to Arizona's drug laws. David Peter Calik ("Calik") argues that Proposition 200 prohibits the trial court from imposing incarceration in jail as a condition of his probation following his conviction for a first offense of possession of methamphetamine. We hold that Proposition 200 does not preclude the trial court from imposing incarceration in jail as a condition of Calik's probation.[1]

---

1. This court issued a previous opinion in this case, *Calik v. Superior Court*, 254 Ariz. Adv. Rep. 22 (App. Oct. 23, 1997), authored by (then Judge) Ruth V. McGregor. Thereafter, various motions and responses were filed in this case. Judge McGregor was appointed to the Arizona Supreme Court during this time. The post-opinion motions were considered by this panel, Presiding Judge Sarah D. Grant and Chief Judge Philip E. Toci and Judge Sheldon H. Weisberg participating. The Motion for Reconsideration was granted and the previous opinion filed on October 23, 1997, was withdrawn.

## FACTS AND PROCEDURAL HISTORY

¶2  On June 20, 1997, Calik, who had no prior criminal history, pled guilty to possession of methamphetamine weighing less than nine grams, a class 4 felony. The trial court, after hearing argument, determined that it would impose probation pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 13–901.01 and further determined that it could impose incarceration in the county jail as a condition of Calik's probation. Prior to sentencing, Calik requested and received a stay from the trial court to file this special action. Because Calik's petition presents a purely legal question that is of statewide importance, we accepted jurisdiction, but denied relief, with this opinion to follow. *See State ex rel. Gonzalez v. Superior Ct.,* 184 Ariz. 103, 104, 907 P.2d 72, 73 (App.1995); A.R.S § 12–120.21(A)(4) (1992).

## I. The Language Of Proposition 200 Is Clear.

■  ¶3  To determine whether Proposition 200 deprives trial courts of the authority to impose incarceration in jail as a condition of probation, we consider the purpose and language of the proposition. Arizona voters passed the Proposition 200 initiative, formally titled the Drug Medicalization, Prevention, and Control Act of 1996, in the Fall 1996 general election. The governor approved it and the initiative became law on December 6, 1996. *See* Ariz. Const. art. 4, pt. 1, § 1(5). Proposition 200 made significant changes to Arizona laws as they pertain to persons convicted of nonviolent, first-time drug offenses. Among other changes, Proposition 200 added A.R.S. section 13–901.01, which requires courts to suspend sentencing and impose probation for persons who commit nonviolent, first-time drug offenses and to order participation in an appropriate drug treatment or education program as a condition of probation. However, Proposition 200 did not address whether courts, acting under A.R.S. section 13–901.01, can impose conditions of probation other than those specified in the proposition.[2]

¶4  Arizona's general probation statute, A.R.S. section 13–901, expressly and unambiguously authorizes the court to require incarceration in jail as a term of probation:

> *When granting probation the court may require that the defendant be imprisoned in the county jail* at whatever time or intervals, consecutive or nonconsecutive, the court shall determine, within the period of probation, as long as the period actually spent in confinement does not exceed one year or the maximum period of imprisonment permitted under chapter 7 of this title, whichever is the shorter.

A.R.S. § 13–901(F) (emphasis added).

¶5  Such clear statutory language "is conclusive unless the legislature clearly expresses an intent to the contrary," and ordinarily our analysis would end here. *Arizona Dep't of Revenue v. General Motors Acceptance Corp.,* 188 Ariz. 441, 444, 937 P.2d 363, 366 (App.1996). Calik argues, however, that although the express language of A.R.S. section 13–901(F) permits courts to impose incarceration in jail as a term of probation, Proposition 200 prohibits courts from exercising such authority over first-time drug offenders. According to Calik, incarceration would frustrate the proposition's underlying policy emphasizing treatment and education over incarceration for first-time, nonviolent drug offenders. For support, Calik relies primarily on the legislative council's analysis of the proposition.[3] This analysis states, "[a] person who is sentenced to probation does not serve any time in jail or prison, is under the supervision of a probation officer and

---

2. In 1997, the Arizona legislature enacted Senate Bill 1373. *See* 1997 Ariz. Sess. Laws, Ch. 104 (amending scattered sections of A.R.S. Title 13). That bill made several additions and changes to Proposition 200. Prior to the bill's effective date, a group known as The People Have Spoken—SB 1373 submitted a valid referendum petition to the Secretary of State's office. As a result, the bill is suspended pending a referendum vote in the November 1998 general election.

3. A.R.S. section 19–124 requires the legislative council to prepare and submit to the Secretary of State an analysis of each ballot proposition. The Secretary of State must include such analysis, along with a list of popular arguments favoring and opposing the measure, in the publicity pamphlet immediately following the measure to which the analysis refers. A.R.S. §§ 19–124(B) and (C) (1990).

remains free as long as the person continues his good behavior." Analysis by Legislative Council, Proposition 200, 1996 Ballot Propositions.

¶ 6 We do not agree that the statute permitting the court to impose incarceration in jail as a condition of probation contravenes the policies of Proposition 200. The proposition addresses the court's authority to impose a *prison sentence* for drug convictions, but does not refer to jails or jail time as a condition of probation. To the contrary, the proposition speaks solely in terms of *prison* sentences, *prison* costs, and *prison* overcrowding.[4] The aims of Proposition 200, as stated in the initiative itself, include freeing up space "in our *prisons* to provide room for violent offenders" and expanding "the success of pilot drug intervention programs which divert drug offenders from *prison* to drug treatment, education, and counseling." Proposition 200 at §§ 3(E) and (F) (emphasis added). The "findings and declarations" section of the proposition also notes that drug treatment programs "are more effective than locking non-violent offenders up in a costly *prison*" and that "eliminating *prison* time" would save tax dollars. *Id.* at §§ 2(D) and (F) (emphasis added).

¶ 7 The distinction between jails and prisons is more than semantic. Although "incarceration" includes time served either in jail or in prison, the latter terms refer to distinct public systems. The Department of Corrections oversees the state prisons, whereas jails fall under the jurisdiction of the respective counties. *See* A.R.S. §§ 41–1604 (Supp. 1997), 31–101 (1996). Courts may not sentence misdemeanor offenders to prison, which is reserved for felons. *See* A.R.S. § 13–707 (1989); *see also State v. Sanchez,* 956 P.2d 1240, 1242 (App.1997) (drawing this

distinction). Parole, which Proposition 200 expressly addresses, exists only in the prison system. *See* A.R.S. § 41–1604.06 (Supp. 1997). Interpreting the language of Proposition 200 to mean "jail" wherever it refers to "prison," as Calik asks us to do, would substantially expand the scope of the proposition. That is not the proper role of this court. *See State ex rel. Morrison v. Anway,* 87 Ariz. 206, 209, 349 P.2d 774, 776 (1960) ("It is a universal rule that courts will not enlarge, stretch, expand, or extend a statute to matters not falling within its express provisions.").

¶ 8 Because the legislative council's analysis fails to distinguish between incarceration in jails, which the proposition does not address, and incarceration in prisons, to which the proposition repeatedly refers, it does not accurately describe the language of the proposition. We find no ambiguity in the language of the proposition, as adopted by the voters, and will not rely upon the legislative council's analysis to create ambiguity where none exists. *See Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991) (courts must give effect to unambiguous statutory language and may not employ other rules of construction to interpret such language).

## II. As Interpreted By The Trial Court, The Statutes Do Not Lead To An Absurd Result.

■ ¶ 9 Calik also asserts that interpreting A.R.S. section 13–901.01(D) to permit jail incarceration as a condition of probation renders that subsection inconsistent with A.R.S. section 13–901.01(E), which prohibits a court from imposing incarceration as a sanction for

---

4. Proposition 200 contains several references to prisons. *See* Proposition 200 (1996), § 2(D) (drug programs are more effective than locking nonviolent offenders up in a costly prison; drug treatment programs cost roughly one-eighth as much as prison); § 2(E) (violent offenders are not adequately punished due to prison overcrowding; imposing drug treatment and education will free up space in our prisons); § 2(F) (tax dollars saved by eliminating prison time should be used for drug treatment and education programs); § 3(E), (F) (purposes of Proposition

200 include freeing up space in our prisons to provide room for violent offenders and expanding the success of drug programs that divert drug offenders from prison to treatment and education); § 5 (violent drug offenders are not eligible for parole and must serve 100 percent of their prison sentences); § 8 (nonviolent drug offenders who are currently serving prison time are eligible for parole); § 9 (persons eligible for parole under Proposition 200 shall be released on parole unless they are determined to be a danger to the public).

violating the terms of probation.[5] We reject that argument for two reasons. First, the use of specific prohibitive language in subsection E actually undermines Calik's argument. That is, the language suggests that the drafters of Proposition 200 considered the circumstances under which a court should be barred from imposing incarceration as a condition of probation. Rather than adopt a blanket rule, Proposition 200 prohibits imposing incarceration only as a *sanction* for violating other terms of probation. If the drafters had wanted similarly to forbid the court from imposing time in jail as an initial condition of probation, they could have used the same limiting language in subsection D, but they did not. When a statute specifically uses a particular term in one section and excludes it in others, courts will not read the term into sections from which it was excluded. *Bigelsen v. Arizona State Bd. of Med. Examiners*, 175 Ariz. 86, 91, 853 P.2d 1133, 1138 (App. 1993).

¶ 10 Nor do we agree, as Calik asserts, that permitting the court to impose incarceration in jail as an initial condition of probation leads to an absurd result. The drafters of Proposition 200 may have foreseen that the statutory purpose of requiring those convicted of personal possession to "successfully undergo court-supervised mandatory drug treatment programs"[6] could, in some instances, best be fulfilled by placing the person undergoing treatment in a controlled environment as a condition of probation. The drafters also could have concluded that, if a court did not regard such placement as important when it initially imposed terms of probation, imposing incarceration as a sanction for violating probation would be inconsistent with the statutory purposes.

¶ 11 To follow Calik's arguments would require us to conclude that Proposition 200 repealed the general probation statute, at least in part, without specifically referring to it. The law does not favor construing one statute as repealing an earlier statute by implication. Whenever possible, we will interpret two apparently conflicting statutes in a way that harmonizes them and gives rational meaning to both. *State v. Tarango*, 185 Ariz. 208, 210, 914 P.2d 1300, 1302, *aff'd on reh'g by State v. Arizona Dep't of Corrections*, 187 Ariz. 211, 928 P.2d 635 (1996). Our interpretation gives effect both to A.R.S. section 13–901 and to A.R.S. section 13–901.01.

### III. We Are Not Restricted To A.R.S. Section 13–901.01 For Determining Whether A Court Can Impose Jail Time As A Condition Of Probation.

¶ 12 *Amici curiae* argue that A.R.S. section 13–901.01 embodies a comprehensive, self-contained scheme for the disposition of eligible offenders and, therefore, we cannot look beyond the statute to determine whether a court can impose jail time as a condition of probation.[7] The argument relies upon *State v. Sirny*, 160 Ariz. 292, 294, 772 P.2d 1145, 1147 (App.1989). In *Sirny*, this court considered whether a trial court could rely upon the general probation statute to impose a jail term as a condition of probation for a defendant found guilty of domestic violence. After considering the unique scheme for the disposition of eligible offenders set out in A.R.S. section 13–3601, we concluded the trial court lacked the authority to do so. *Id.* at 295, 772 P.2d at 1148.

¶ 13 The domestic violence statute at issue, however, is quite different from Proposi-

---

5. Subsection D directs the court to require participation in an appropriate drug treatment or education program as a condition of probation, but does not forbid or require any other condition of probation. Subsection E instructs that if the court determines a person placed on probation pursuant to A.R.S. section 13–901.01 violates the terms of his probation, the court "shall select the additional conditions it deems necessary." A.R.S. § 13–901.01(D) and (E). Furthermore, all argument in this section refers to the 1996 version of the statute. The 1997 version, which is suspended pending a vote in the No-

vember 1998 general election (see footnote 1), deleted the "short of incarceration" language.

6. Proposition 200 at § 3(C).

7. Calik did not make this argument before the trial court. We usually do not consider arguments not presented to the trial court. *See State v. Jones*, 185 Ariz. 471, 480, 917 P.2d 200, 209 (1996). In the interest of resolving all issues presented, we exercise our discretion to consider *amici's* argument.

tion 200. In enacting the domestic violence statute, the legislature set out the entire scheme for the disposition of eligible offenders, detailing specific procedures to be followed from arrest to completion of diversion or disposition. The statute specifies which offenses constitute domestic violence; how and when arrests for those offenses can be made; and the conditions and procedures of probation for those offenses. Although such a detailed scheme may be regarded as a self-contained, comprehensive program, A.R.S. section 13–901.01 is much less expansive. It simply defines the offenses to which it applies and penalties that can be imposed. It falls far short of a comprehensive plan for the disposition of drug offenders. Therefore, the holding of *Sirny* does not apply.

¶ 14 We conclude that the combined effect of A.R.S. sections 13–901 and 13–901.01 is to permit the court to impose incarceration in jail as a condition of probation and that the effect is consistent with the language and purpose of Proposition 200.

## CONCLUSION

¶ 15 For the foregoing reasons, we accept jurisdiction, but deny relief.

PHILIP E. TOCI, Chief Judge, and
SHELDON H. WEISBERG, Judge, concur.