990 P.2d 1055

David Peter CALIK, Petitioner,

v.

Hon. Kirby KONGABLE, Judge of the Superior Court of the State of Arizona, in and for the County of Yuma, Respondent Judge,

State of Arizona, Real Party in Interest.

No. CV–98–0389–PR.

Supreme Court of Arizona,
En Banc.

Dec. 20, 1999.

Ronald F. Jones, Yuma County Public Defender By: Victoria L. Thompson, Michael J. Perry, William A. Albright, Yuma, and Snell Wilmer, L.L.P. By: Patricia Lee Refo, Phoenix Attorneys for David Peter Calik, Petitioner.

Janet A. Napolitano, Arizona Attorney General By: Paul J. McMurdie, Phoenix, Attorneys for Hon. Kirby Kongable, Respondent Judge.

Patricia A. Orozco, Yuma County Attorney By: Mark Edward Hessinger, Thomas W. Jones, Yuma, Attorneys for State of Arizona, Real Party in Interest.

Brown & Bain, P.A. By: Paul F. Eckstein, John J. Tuchi, Phoenix, Attorneys for Arizonans for Drug Policy Reform and The People Have Spoken, Amici Curiae.

## O P I N I O N

FELDMAN, Justice.

¶ 1 We granted review to determine whether the initiative proposal adopted as Proposition 200 prohibits a trial court from imposing jail time as a condition of probation for a person convicted of first-offense personal possession or use of a controlled substance. We hold that incarceration may not be imposed under such circumstances.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In 1996, voters approved an initiative proposal known as Proposition 200, the Drug Medicalization, Prevention, and Control Act of 1996, which made changes to Arizona's law as it pertained to persons convicted of personal possession or use of a controlled substance. Proposition 200, codified as A.R.S. § 13–901.01, requires courts to suspend sentencing and impose probation for first-time offenders. It also directs that offenders participate in an appropriate drug treatment or education program as a condition of probation.

¶ 3 In 1997, David Peter Calik pleaded guilty to possession of methamphetamine weighing less than nine grams, a class 4 felony. The trial judge concluded that because Calik was a first-time offender, he was to be sentenced under § 13–901.01. He also determined he could incarcerate Calik in the county jail as a condition of probation. Calik objected, arguing that Proposition 200 prohibited the judge from imposing such a condition. Prior to sentencing, Calik filed a special action in the court of appeals, and his sentencing was stayed.

¶ 4 While Calik's special action was pending, the legislature passed S.B. 1373, which amended § 13–901.01(E) to eliminate language that prohibited incarceration as a modified term of probation for first-time offenders who violated the terms of their probation. It also added a subsection ·to the general probation statute specifically permitting incarceration as a condition of probation for a defendant placed on probation pursuant to § 13–901.01. The legislation was to become effective in July 1997 but a citizen's group, The People Have Spoken–SB 1373, succeeded in placing two referendum measures to repeal the legislation on the November 1998 general election ballot.

¶ 5 The Secretary of State certified the referenda in August 1997, thus suspending application of S.B. 1373's provisions pending the outcome of the 1998 election. *See* ARIZ. CONST. art. IV, pt. 1, § 1. In spite of the certification, on October 23, 1997, the court of appeals affirmed the trial judge's incarceration order, basing its opinion in large part on the amendments in S.B. 1373.

¶ 6 Calik filed a motion for reconsideration, in which the group proposing the referenda joined as amicus curiae. He pointed out that S.B. 1373 had not taken effect and argued that Proposition 200 prohibited trial judges from imposing the jail time allowed under § 13–901(F), the general probation statute, as a condition of probation for first-time offenders convicted under § 13–901.01. Such a condition would contravene Proposition 200's emphasis on treatment and education, not

incarceration, for first-time offenders. He also argued that interpreting the statute to permit jail incarceration as a condition of probation under § 13–901.01(D) would be inconsistent with § 13–901.01(E), which prohibits a court from imposing incarceration as a sanction for violating the terms of probation.

¶ 7 The court of appeals granted Calik's motion for reconsideration and withdrew its opinion. The court thereafter issued a second opinion, still disagreeing with Calik's arguments. In the November 1998 election, the voters passed the two referenda, thus rejecting S.B. 1373. The amendments to § 13–901.01 therefore never went into effect.

¶ 8 In its second opinion, the court first looked at the language in the Findings and Declarations portion of the proposition, which prohibited incarceration in *prison* and did not mention *jail*, found a distinction between the two terms, and refused to expand the scope of the legislation to include a prohibition against *jail* time. Then, pointing to § 13–901.01(E), the court concluded that the drafters knew how to specifically forbid imposing incarceration and reasoned they must have chosen not to do so at the initial imposition of sentence. The court also said the drafters may have thought that the controlled environment of jail would benefit some offenders going through court-supervised mandatory drug treatment, thereby harmonizing § 13–901(F), the general probation statute, with § 13–901.01.

¶ 9 Thus, the court of appeals concluded that the combined effect of § 13–901 and § 13–901.01 permits judges to impose jail time as a condition of probation and that the effect is consistent with the language and purpose of Proposition 200. *See Calik v. Kongable,* 194 Ariz. 188, 192, 979 P.2d 1, 5 (App.1998). We granted Calik's petition for review to determine the proper scope and interpretation of Proposition 200. We have jurisdiction pursuant to Ariz. Const. art. VI, § 5(3) and (4).

## DISCUSSION

¶ 10 This is an issue of statutory construction. "Our primary purpose is to effectuate the intent of those who framed the provision and, in the case of an [initiative], the intent of the electorate that adopted it." *Jett v. City of Tucson,* 180 Ariz. 115, 119, 882 P.2d 426, 430 (1994). With only a few exceptions, if the language is clear and unambiguous, we apply it without using other means of statutory construction. *See Hayes v. Continental Ins. Co.,* 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994).

**A. The text of the statute provides that first-time offenders will not be incarcerated**

¶ 11 Proposition 200 was passed by the voters and enacted as follows:

A. Notwithstanding any law to the contrary, any person who is convicted of the personal possession or use of a controlled substance as defined in § 36–2501 shall be eligible for probation. The court *shall suspend the imposition or execution of sentence and place such person on probation.*

\* \* \*

D. If a person is convicted of personal possession or use of a controlled substance as defined in § 36–2501, as a condition of probation, the court shall require participation in an appropriate drug treatment or education program administered by a qualified agency or organization that provides such programs to persons who abuse controlled substances. Each person enrolled in a drug treatment or education program shall be required to pay for his or her participation in the program to the extent of his or her financial ability.

E. *A person who has been placed on probation* under the provisions of this section, *who is determined by the court to be in violation of his or her probation shall have new conditions of probation established* in the following manner: the court shall select the additional conditions it deems necessary, including intensified drug treatment, community service, intensive probation, home arrest, or *any other such sanctions short of incarceration.*

F. *If a person is convicted a second time* of personal possession or use of a controlled substance as defined in § 36–

2501, *the court may include additional conditions of probation* it deems necessary, including intensified drug treatment, community service, intensive probation, home arrest, *or any other action within the jurisdiction of the court.*

G. A person who has been convicted three times of personal possession or use of a controlled substance as defined in § 36–2501 shall not be eligible for probation under the provisions of this section, but instead shall be sentenced pursuant to the other provisions of Title 13, Chapter 34.

A.R.S. § 13–901.01 (emphasis added).

¶ 12 Under subsection A, the initial conviction requires probation and participation in a drug treatment or education program at the defendant's expense. The dictionary definition and common understanding coincide on the meaning of "probation," defining it as a "court-imposed criminal sentence that, subject to stated conditions, releases a convicted person into the community instead of sending the criminal to jail or prison." BLACK'S LAW DICTIONARY 1220 (7th ed.1999). If probation imposed under § 13–901.01(A) is violated, additional conditions may be imposed, but the statute specifically excludes incarceration as one of these added conditions. A.R.S. § 13–901.01(E).[1] It makes no sense for the supplemented terms of probation to be less severe than the original terms when the additional conditions are being added as a sanction for violating the original terms of probation. Thus, we agree with Calik that the trial judge's construction of the statute would lead to an absurd result. If a first-time offender were given jail time as a condition of probation and then violated the terms of probation, the judge would be specifically prohibited from imposing incarceration for the violation and arguably could be forced to rescind the unserved jail sentence previously imposed.

■ ¶ 13 The statute is explicit that a second conviction for personal possession or use also results in mandatory probation but may include up to one year of jail time under the provision allowing "any other action within the jurisdiction of the court." A.R.S. § 13–901.01(F). The general probation statute is the source of the court's jurisdiction:

When granting probation the court may require that the defendant be imprisoned in the county jail at whatever time or intervals, consecutive or nonconsecutive, the court shall determine, within the period of probation, as long as the period actually spent in confinement does not exceed one year or the maximum period of imprisonment permitted under chapter 7 of this title, whichever is the shorter.

A.R.S. § 13–901(F). This statute does not apply to probation imposed under § 13–901.01(A) due to the "[n]otwithstanding any law to the contrary" language at the beginning of the latter statute. Without statutory authority, "a trial court cannot legally combine a prison or jail sentence with probation." *State v. Sanchez,* 191 Ariz. 418, 419, 956 P.2d 1240, 1241 (App.1997). Because § 13–901.01 is specifically directed at personal possession and use of controlled substances, its provisions govern those of the general statute. *See State v. Benally,* 137 Ariz. 253, 256, 669 P.2d 1030, 1033 (App.1983). Thus, jail confinement, as allowed by the general probation statute, applies only when sentencing under §§ 13–901.01(F) and (G).

¶ 14 Finally, under § 13–901.01(G), a third or subsequent conviction for personal possession or use makes the defendant ineligible for probation and allows the court to sentence an offender to prison under other provisions of Title 13, ch.34. From the language of the statute, it is plain that a graduated sequence of punishment was intended. This is even more obvious when viewing the statute as a whole, as we must. *See Aros v. Beneficial Arizona, Inc.,* 194 Ariz. 62, 66, 977 P.2d 784, 788 (1999).

¶ 15 We agree with the state that the simple addition of the phrase "without incarceration" at the end of § 13–901.01(A) would have demonstrated the voters' intent even more clearly, but further analysis of the stat-

---

1. Incarceration includes confinement in either jail or prison. *See* BLACK'S LAW DICTIONARY 764 (7th ed.1999).

ute, under standard rules of construction, supports our conclusion as to the meaning of the text.

## B. If any ambiguity exists, the legislative intent of the enacting group controls

■ ¶ 16 "When an ambiguity exists however, we attempt to determine legislative intent by interpreting the statute as a whole, and consider 'the statute's context, subject matter, historical background, effects and consequences, and spirit and purpose.'" *Id.* Initiatives such as Proposition 200 come from the electorate and are fundamental to Arizona's scheme of government. *See Fairness & Accountability in Ins. Reform v. Greene*, 180 Ariz. 582, 584, 886 P.2d 1338, 1340 (1994); *see also* Randall L. Hodgkinson, Comment, *Executive, Legislative, and Judicial Power Over Direct Legislation in Arizona*, 23 ARIZ. ST. L.J. 1111, 1112 (1991). Under the Arizona Constitution, "the people reserve the power to propose laws and amendments to the Constitution and to enact or reject such laws and amendments at the polls, independently of the Legislature." ARIZ. CONST. art. IV, pt. 1, § 1. Because there is no legislative history and associated documentation retained for an initiative proposed and enacted by the electorate, the search for "popular intent" can be even more difficult than the traditional search for legislative intent. *See Randolph v. Groscost*, 195 Ariz. 423, 989 P.2d 751 (1999); Jane S. Schacter, *The Pursuit of "Popular Intent": Interpretive Dilemmas in Direct Democracy*, 105 YALE L.J. 107 (1995). Formal statements of intent and individual debates on propositions are typically not recorded. However, the publicity pamphlet for Proposition 200, the stated purpose of the proposition, and the subsequent history of the measure provide some insight into this case, which presents a question of interpretation rather than the even more difficult issue of severability presented by *Randolph*.

### 1. Publicity pamphlet

■ ¶ 17 Courts typically "rely on formal interpretive sources, such as statutory text, language in related legislation, judicial opinions, canons, and, on occasion, ballot pamphlets or voter guides (used in lieu of legislative history)." Schacter, *supra*, 105 YALE L.J. at 111; *see also Jett*, 180 Ariz. at 119–20, 882 P.2d at 430–31(publicity pamphlet material entitled to "some weight"); *Laos v. Arnold*, 141 Ariz. 46, 48, 685 P.2d 111, 113 (1984) (legislative council's analysis, contained in publicity pamphlet, provided intent of framers and electorate); 2A NORMAN J. SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 48.19 (5th ed. 1992) (Explanations and informative materials on a proposed bill made available to the public are considered "relevant legislative history for purposes of construction of a measure after its enactment").

¶ 18 The analysis of each initiative by the legislative council is required by statute in Arizona. A.R.S. § 19–123. The council is a statutory agency, established under Title 41, ch. 8. *See* A.R.S. §§ 41–1301 to 41–1310. It provides services such as bill drafting and research "to improve the quality of legislation." A.R.S. § 41–1304(A)(1). It also prepares and files "an analysis of the provisions of each ballot proposal of a measure or proposed amendment." A.R.S. § 41–1304(A)(9). This impartial analysis is to include a description of the measure and is to be written in clear and concise terms. A.R.S. § 19–124(B). The purpose of the council's analysis is to "assist voters in rationally assessing an initiative proposal by providing a fair, neutral explanation of the proposal's contents and the changes it would make if adopted." *Fairness & Accountability*, 180 Ariz. at 590, 886 P.2d at 1346. The council's analysis is to be included in the publicity pamphlet given to each person "applying to vote." A.R.S. § 19–123(A)(4) and (C). The publicity pamphlet for Proposition 200 specifically states that "[a] person who is sentenced to probation does not serve any time in jail or prison, is under the supervision of a probation officer and remains free as long as the person continues his good behavior." Analysis by Legislative Council § 3(F), Proposition 200, 1996 Ballot Propositions. In short, the electorate was entitled to rely on this description of the intent or effect of the initiative proposal. *See Fairness & Accountability*, 180 Ariz. at 590, 886 P.2d at 1346. The council's description is supported further by review of the proposi-

tion itself and voters' actions after the measured was passed.

### 2. Content and purpose of Proposition 200

¶ 19 "If neither the statute's text nor the statement of legislative intent resolves the exact issue before the court, 'we must resolve any ambiguity by considering the legislature's overall purposes and goals in enacting the body of legislation in question.' " *Aros,* 194 Ariz. at 66, 977 P.2d at 788 (citing *Arizona Life & Disability Ins. Guar. Fund v. Honeywell, Inc.,* 190 Ariz. 84, 87, 945 P.2d 805, 808 (1997)). The Findings and Declarations in the publicity pamphlet for Proposition 200 delineated the changes in Arizona's approach to drug control:

(A) [W]e need to medicalize Arizona's drug control policy: recognizing that drug abuse is a public health problem and treating abuse as a disease.

\* \* \*

(D) The drug problems of non-violent persons who are convicted of personal possession or use of drugs are best handled through court-supervised drug treatment and education programs. The programs are more effective than locking non-violent offenders up in a costly prison.

Text of Proposed Amendment § 2, Proposition 200, 1996 Ballot Propositions. Statutory provisions "must be construed according to the fair meaning of their terms to promote justice and effect the objects of the law." A.R.S. § 13–104. It is true, as the court of appeals said, that time in jail can be an effective adjunct to probation. However, the goal of Proposition 200, to treat initial convictions for personal possession and use of a controlled substance as a medical and social problem, must govern. The subsequent actions of the electorate further demonstrate its commitment to this regime.

### 3. Voters specifically rejected the legislature's proposed changes

¶ 20 Courts should avoid "hypertechnical constructions that frustrate legislative intent." *State v. Cornish,* 192 Ariz. 533, 537, 968 P.2d 606, 610 (App.1998) (citing *State v. LeMatty,* 121 Ariz. 333, 337, 590 P.2d 449, 453 (1979)). If the voters have resolved an issue, "absent unconstitutionality, the court should honor a clear electoral choice." Schacter, *supra,* 105 YALE L.J. at 152.

¶ 21 Subsequent history cannot always be considered when construing legislation. *See San Carlos Apache Tribe v. Superior Court,* 193 Ariz. 195, 209, 972 P.2d 179, 193 (1999). One of the reasons behind this accepted rule is that the subsequent enacting body is often not the same as the one that enacted the original legislation. *Id.* However, the case at bar presents a different situation. Proposition 200 was an initiative measure proposed and approved by the Arizona electorate. This is not a case of the current legislature reviewing legislation passed thirty years earlier. *Cf. San Carlos Apache Tribe,* 193 Ariz. at 209, 972 P.2d at 193. The electorate approved an initiative in 1996 emphasizing treatment and counseling for first-time offenders. When the legislature immediately amended the approved legislation to specifically allow trial judges to impose jail as a condition of probation, the electorate quickly responded by successfully challenging and defeating the proposed legislative amendments in the very next general election. This sequence of events in a relatively short time frame should pragmatically be considered as one overall or combined action and lead to the inevitable conclusion that the electorate never intended trial judges to have the discretion to impose jail time as a condition of probation.

### CONCLUSION

¶ 22 A.R.S. § 13–901.01 requires courts to suspend sentencing and impose probation for persons convicted of first-time personal possession and use of controlled substances and to order participation in an appropriate drug treatment or education program as a condition of probation. Neither the text nor the intent of the electorate (as evidenced by the publicity pamphlet, the content and purpose of Proposition 200, and the subsequent actions of the electorate) supports imposing incarceration as a condition of the required probation for first-time offenders. Thus, the

**502**

court of appeals' opinion is vacated, the trial judge's order retaining jurisdiction to impose jail time is vacated, and we remand to the trial court for further proceedings consistent with this opinion.

CONCURRING: THOMAS A. ZLAKET, Chief Justice, CHARLES E. JONES, Vice Chief Justice, FREDERICK J. MARTONE, Justice, and JOSEPH W. HOWARD, Judge.

Justice RUTH V. McGREGOR recused herself; pursuant to ARIZ. CONST. art. VI, § 3, the Honorable JOSEPH W. HOWARD of Division Two, Arizona Court of Appeals, was designated to sit in her stead.