ECKERSTROM, Chief Judge:
*600 ¶ 1 David Green appeals from his convictions and sentences for two counts of possession of a narcotic drug and one count of possession of drug paraphernalia, all non-dangerous, repetitive offenses. Green argues the trial court erroneously denied his motion to suppress evidence because police unlawfully extended his detention. He further argues the court was required to sentence him to probation under A.R.S. § 13-901.01. We affirm in part and vacate and remand in part.
Factual and Procedural History
¶ 2 "In reviewing a motion to suppress, we consider only the evidence presented at the suppression hearing and view the facts in the light most favorable to sustaining the trial court's ruling." State v. Gonzalez , 235 Ariz. 212, ¶ 2, 330 P.3d 969 (App. 2014). In an early morning of August 2016, an officer with the Tucson Police Department saw a truck parked in a secluded part of Fort Lowell Park several hours after the park had closed for the night. The officer approached the driver's door and saw a pipe on the center console that, based on his training and experience, was a type used only for "smoking [il]licit substances." The officer handcuffed Green, the driver, and sat him in the back of his patrol car while he searched the truck, finding another similar pipe. The officer then removed Green from the patrol car, read him his Miranda[1] rights, and arrested him for possession of one of the pipes. Although the officer intended to release Green after citing him for trespassing and possession of the pipe, he nevertheless returned Green to the patrol car in order to check whether he was in violation of federal immigration laws pursuant to Senate Bill 1070 and department policy. See A.R.S. § 11-1051.
¶ 3 The check revealed no immigration issues and, when the officer removed Green from the car a second time, he saw a small plastic bag with a "crystalized substance" fall from Green's lap. The officer conducted a field test for narcotics, and the substance tested positive for the presence of illegal drugs. He then placed Green under custodial arrest. During a search of Green's person incident to that arrest, the officer found a plastic package with heroin and a container with morphine pills.
¶ 4 Before trial, Green filed a motion to suppress the drug evidence, arguing his detention had been unreasonably prolonged after the officer had decided merely to cite and release him for trespassing and possession of the pipe. Following an evidentiary hearing, the trial court denied the motion, finding the length of the delay had not been unreasonable and, in any event, police had not "gain[ed] any advantage" from it. Following trial, the jury found Green guilty of the offenses as described above.[2]
¶ 5 Before sentencing, Green filed a motion arguing he was entitled to mandatory probation under § 13-901.01. Specifically, he urged that his 2006 conviction for solicitation to sell a narcotic drug was not a disqualifying prior conviction, or "strike." See § 13-901.01(H)(1). Following a hearing, the court denied the motion and sentenced Green to concurrent prison terms, the longest of which were six years. Green appealed; we have jurisdiction. See A.R.S. §§ 13-4031, 13-4033(A)(1).
Unreasonable Delay
¶ 6 Green first argues the trial court erroneously denied his motion to suppress because, after the officer completed his investigation into the trespassing and paraphernalia offenses, he would not have discovered any controlled substances but for having *601 unlawfully prolonged the detention in order to complete an immigration check. We review a trial court's ruling on a motion to suppress for an abuse of discretion, but review constitutional and purely legal issues de novo. State v. Gay , 214 Ariz. 214, ¶ 4, 150 P.3d 787 (App. 2007).
¶ 7 Without citation to authority, Green argues that before the officer decided to check his immigration status, "this incident became the equivalent of a standard traffic stop" because the officer had "decided that he was going to issue [Green] a citation and release him."[3] Accordingly, Green and amici rely on Rodriguez v. United States to argue his detention should not have lasted "longer than is necessary to effectuate [the] purpose" of investigating his trespass and possession of the pipes. --- U.S. ----, 135 S.Ct. 1609, 1614, 191 L.Ed.2d 492 (2015). Arguing the immigration check was a "detour from the mission of the stop," Green insists the delay could not be justified apart from reasonable suspicion that he had been unlawfully present in the country. Green also quotes State v. Taylor to argue police cannot "search anyone they choose to cite for a misdemeanor offense or that they could arrest although they do not intend to [do so]." 167 Ariz. 439, 440, 808 P.2d 324, 325 (App. 1990).
¶ 8 But Rodriguez and Taylor do not control. In Rodriguez , the defendant was entitled to release after he had been cited for a civil traffic violation and neither reasonable suspicion nor probable cause supported any further delay. 135 S.Ct. at 1612. Here, Green had been criminally arrested for possession of drug paraphernalia and, although the officer both could have released and subjectively intended to release him, Green was not entitled to release at that point. See A.R.S. § 13-3883(A)(1), (2), (4) ; see also A.R.S. § 13-3903 (authorizing discretionary field release of persons arrested for misdemeanor offenses); State v. Pickett , 126 Ariz. 173, 174, 613 P.2d 837, 838 (App. 1980) ("Under A.R.S. [§] 13-3903(A), the use of the citation field release procedure is optional, not mandatory."). Because Green had been subjected to a valid arrest supported by probable cause, actual release remained contingent not only on completion of the officer's investigation, but also a favorable exercise of his discretion. See § 13-3883.
¶ 9 Having been arrested, Green was not free to go about his business unless and until he was actually released, see Pickett , 126 Ariz. at 174, 613 P.2d at 838 ; this is so even if the officer had subjectively intended to release Green before investigating possible immigration violations. Therefore, even assuming without deciding that he had no authority to conduct such a check, and that the bag would not have been discovered but for the delay caused thereby, the detention was not unlawfully prolonged. Moreover, Green cites no authority, and we are aware of none, indicating that once an officer subjectively intends to merely cite and release an arrestee, he must do so as soon as possible. Cf. Whren v. United States , 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").
¶ 10 Taylor is likewise distinguishable, as it did not concern any question of a delay. There, officers were in the process of citing the defendant for drinking beer in a city park when they searched him and found hashish before deciding to arrest him. 167 Ariz. 439-40, 808 P.2d at 324-25 ("[A] search must be justified at its inception, not by what it turns up."). Here, however, the officer did not search Green's person until after the bag of narcotics had fallen from his lap. At that point, the officer no longer intended to cite and release him, but subjected him to custodial arrest, and a search incident to arrest was therefore permissible. See id. at 440, 808 P.2d at 325. Insofar as Green's custodial arrest preceded the search of his person, Taylor does not apply. Thus, the court did *602 not err by denying Green's motion to suppress.[4]
Mandatory Probation
¶ 11 Green next argues the trial court was required to sentence him to probation because he had not previously been convicted twice of personal possession or use of a controlled substance or drug paraphernalia. See § 13-901.01(A), (H)(1). Specifically, he contends his 2006 conviction for solicitation to sell a narcotic drug was not a conviction for personal possession or use and, therefore, should not have counted as a disqualifying prior conviction.[5] See § 13-901.01(H)(1). "Statutory interpretation is a question of law we review de novo." State v. Cope , 241 Ariz. 323, ¶ 5, 387 P.3d 746 (App. 2016).
¶ 12 Also known as Proposition 200, § 13-901.01 codifies the Drug Medicalization, Prevention, and Control Act of 1996, a voter initiative aimed at providing treatment, education, and community service as an alternative to incarceration for persons convicted of personal possession or use of controlled substances. State v. Thomas , 196 Ariz. 312, ¶ 1, 996 P.2d 113 (App. 1999) ; Goddard v. Superior Court , 191 Ariz. 402, ¶ 9, 956 P.2d 529 (App. 1998). It provides, "[A]ny person who is convicted of the personal possession or use of a controlled substance or drug paraphernalia is eligible for probation. The court shall suspend the imposition or execution of sentence and place the person on probation." § 13-901.01(A).
¶ 13 Not all persons convicted for personal possession, however, are entitled to probation. In unambiguous terms, the statute excludes defendants who "[h]ad been convicted three times of personal possession of a controlled substance or drug paraphernalia." § 13-901.01(H)(1). Also excluded are persons who have been "convicted of or indicted for a violent crime," who "refuse[ ] drug treatment as a term of probation," who "reject[ ] probation," or who were convicted of the personal possession of methamphetamine or methamphetamine paraphernalia. § 13-901.01(B), (H)(2)-(4). The statute provides no other exclusions.
¶ 14 To determine whether Green is entitled to probation, we must determine whether "personal possession" encompasses solicitation to sell a narcotic drug. We begin with the plain or semantic meaning. See A.R.S. § 13-104 ("the provisions [of the criminal code] must be construed according to the fair meaning of their terms to promote justice and effect the objects of the law"); see also Calik v. Kongable , 195 Ariz. 496, ¶ 10, 990 P.2d 1055 (1999) ("With only a few exceptions, if the language is clear and unambiguous, we apply it without using other means of statutory construction.").
¶ 15 As an initial matter, our statutes criminalizing possession of controlled substances do not provide any specialized definition of personal possession. See A.R.S. §§ 13-3401 through 13-3423. We therefore look to the "ordinary meaning" of the words. State v. Dann , 220 Ariz. 351, ¶ 88, 207 P.3d 604 (2009). "Personal" means "[o]f or relating to a particular person." The American Heritage Dictionary 1317 (5th ed. 2011). In this context, the most natural meaning is that personal possession means possession for an individual's own use, consumption, and enjoyment as distinguished from possession for commercial purposes-for-sale offenses. See A.R.S. § 13-3408(A)(1), (2).
¶ 16 Indeed, the statute appears to adopt this understanding: "[p]ersonal possession ... pursuant to this section shall not include possession for sale, production, manufacturing or transportation for sale of any controlled substance." § 13-901.01(C). The distinction between what is commonly referred to as simple possession and possession for sale is consistent with our laws criminalizing various manners in which a person may possess *603 controlled substances. See A.R.S. §§ 13-105(35) (defining "[p]ossession"), 13-3408(A) (listing as separate offenses "[p]ossess[ion] or use [of] a narcotic drug" and "[p]ossess[ion of] a narcotic drug for sale"); Foster v. Irwin , 196 Ariz. 230, ¶ 7, 995 P.2d 272 (2000) ("The terms 'possession' and 'personal possession' are not separately defined in the criminal code."). Thus, by excluding "possession for sale" from "personal possession," subsection (C) makes clear that throughout § 13-901.01, personal possession only encompasses those offenses involving possession for one's own use.
¶ 17 By this standard, the prior offense at issue here, solicitation to sell narcotics, does not qualify as an offense involving personal possession. Rather, that offense describes an inchoate crime, meaning Green was not convicted of actually or constructively possessing a controlled substance at all-much less for his own use.[6] See A.R.S. § 13-1002 ; see also State v. Ossana , 199 Ariz. 459, ¶ 11, 18 P.3d 1258 (App. 2001) (attempt to possess narcotics not a prior conviction for personal possession under § 13-901.01 ). Taking our guidance, as we must, from the semantic meaning of the statute's words, see Calik , 195 Ariz. 496, ¶ 10, 990 P.2d 1055, we cannot agree that Green's conviction for solicitation to sell narcotics can be counted as a prior conviction for "personal possession" pursuant to § 13-901.01(H)(1).
¶ 18 The state correctly observes that previous decisions by Arizona courts have deviated from the plain meaning of "personal possession" after determining, in other contexts, it would have led to absurd results. Before its amendment in 2002, the statute had provided the benefit of mandatory probation only to those convicted of the "personal possession or use" of certain controlled substances. See H.R. Con. Res. 2013 § 1 (2002) (enacted); State v. Estrada , 201 Ariz. 247, ¶ 16, 34 P.3d 356 (2001). Our supreme court nonetheless held that the exemption for incarceration applied equally to those merely convicted of possessing paraphernalia for personal use. Estrada, 201 Ariz. 247, ¶ 24, 34 P.3d 356. In so holding, the court reasoned that any other understanding of the statute would lead to "a transparently absurd result" that would frustrate the electorate's intent. Id. ¶ 23.
¶ 19 In State v. Guillory , 199 Ariz. 462, ¶ 1, 18 P.3d 1261 (App. 2001), this court reasoned that "conspiracy to unlawfully possess a narcotic drug" could be counted as a prior disqualifying offense because "it 'is an offense of the same class as the most serious offense which is the object of or result of the conspiracy.' " Id. ¶ 6 (quoting A.R.S. § 13-1003(D) ). It therefore concluded that it would be an absurdity-and contrary to the voters' intent-to consider possession as a prior, disqualifying offense but not conspiracy to commit the same offense. Id. Other cases from our court have likewise assumed the voters' logic-for the purposes of absurdity analysis-could be premised on the comparative severity of offenses. See Stubblefield v. Trombino , 197 Ariz. 382, ¶ 6, 4 P.3d 437 (App. 2000) (illogical to require probation for possession of narcotics but not for attempted possession of narcotics); see also Raney v. Lindberg , 206 Ariz. 193, ¶ 20, 76 P.3d 867 (App. 2003) (if probation applies to preparatory drug offenses, such offenses must also be considered as disqualifying priors); but see Ossana , 199 Ariz. 459, ¶ 11, 18 P.3d 1258 (App. 2001) (finding attempt to possess not a disqualifying prior, reasoning that absurdity argument not equally compelling when applied to different sections of act).
¶ 20 In arguing that we should similarly depart from the plain language of subsection (H)(1) here, the state overlooks that we apply the absurdity doctrine only when we can conjure no plausible legislative logic for the result compelled by that language. Our role is not to rewrite statutes to conform to our own notions of what they should say. State ex rel. Polk v. Campbell , 239 Ariz. 405, ¶ 12, 372 P.3d 929 (2016). In Estrada , our supreme court defined absurdity as meaning something "so irrational, unnatural, or inconvenient that it cannot be supposed to have been within the intention of persons with ordinary *604 intelligence and discretion." 201 Ariz. 247, ¶ 17, 34 P.3d 356 (quoting Perini Land Dev. Co. v. Pima County , 170 Ariz. 380, 383, 825 P.2d 1, 4 (1992) ).
¶ 21 In evaluating absurdity here, we address the intentions of the voters as to which prior offenses would count as potential "strikes," cumulatively disqualifying a defendant from mandatory probation. As our supreme court recognized in Estrada , Proposition 200 "change[d] Arizona's drug control policy by treating drug abuse as a medical problem best handled by treatment and education, not by incarceration." Id. ¶ 2. This court has acknowledged a tandem purpose, "to free prison space for drug dealers and violent offenders." State v. Pereyra , 199 Ariz. 352, ¶ 11, 18 P.3d 146 (App. 2001).
¶ 22 In conformity with these goals, the voters could plausibly have intended a distinction between drug possession for personal use (counting as a strike) and non-possessory drug offenses (not counting as a strike). Multiple convictions for the former offense would necessarily demonstrate prior opportunities for substance-abuse rehabilitation that convictions for the latter offenses would not. Moreover, as this court acknowledged in Gray v. Irwin , 195 Ariz. 273, ¶ 15, 987 P.2d 759 (App. 1999), a defendant who has a history of more serious criminal offenses "would presumably have already received separate ... sentences on those prior convictions." The harsher punishment for the more serious nature of the crime has already occurred, and thus the more serious nature of the offense does not necessarily justify removing the defendant from the class of persons subject to mandatory probation.
¶ 23 Notably, subsection (H) itemizes those circumstances when otherwise-eligible drug offenders may be disqualified from mandatory probation based on prior criminal history.[7] Those exceptions do not identify disqualifying prior convictions based on their severity or sentencing classification.[8] Rather, they sort criminal history based on how it informs an offender's amenability to future treatment. See A.R.S. § 13-901.01(H)(2)-(4) (probation not mandatory for instant offense if defendant has previously refused drug treatment, rejected probation, or was "convicted of ... personal possession ... involv[ing] methamphetamine").
¶ 24 Thus, the plain language of subsection (H)(1), which counts personal possession drug offenses as disqualifying priors-but not inchoate drug crimes-rationally pursues both the broader goals of the legislative scheme and the specific goal of the subsection wherein it is placed. We may, or may not, think this distinction wise, but it is certainly not absurd. See State v. Chandler , 244 Ariz. 336, ¶ 9, 418 P.3d 1109 (App. 2017) (legislature, not courts, in best position to make policy determinations concerning range of punishment). We acknowledge that several previous cases have interpreted the exclusion in subsection (H)(1) as applied to inchoate or for-sale offenses-and come to results that cannot be harmonized. Compare Raney , 206 Ariz. 193, ¶¶ 18-20, 76 P.3d 867, with Ossana , 199 Ariz. 459, ¶¶ 10-11, 18 P.3d 1258. For this reason, prior precedent does not provide clear guidance in resolving the question before us. Fortunately, the plain language of the statute does. As Bryan Garner and the late Justice Scalia admonished, "A system of democratically adopted laws cannot endure-it makes no sense-without the belief that words convey discernible meanings and without the commitment of legal arbiters to abide by those meanings." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts , xxix (2012).
¶ 25 We therefore hold that under the plain language of the statute, Green's 2006 conviction for solicitation to sell a narcotic drug does not constitute a prior conviction for personal possession and, therefore, he is entitled to mandatory probation under § 13-901.01(A).
*605 Disposition
¶ 26 We affirm Green's convictions, but vacate his sentences and remand for resentencing consistent with this opinion.

Miranda v. Arizona , 396 U.S. 868, 90 S.Ct. 140, 24 L.Ed.2d 122 (1969).

The jury could not reach unanimity on count three, possession of a dangerous drug; the court dismissed that count with prejudice on the state's motion.

At oral argument, Green asserted that he had not been arrested but had only been subjected to an investigative detention. We cannot agree. After discovering the pipe in Green's truck, the officer "place[d] him under arrest," gave him Miranda warnings, and, while Green was still handcuffed, put him back into his patrol car. See State v. Snyder , 240 Ariz. 551, ¶ 11, 382 P.3d 109 (App. 2016) (handcuffing and Miranda warnings indicia of arrest).

Amicus challenges the officer's authority to enforce immigration law. However, the issue was neither raised nor argued by the parties. Further, because Green was not entitled to release, we do not reach the question.

Below Green argued his 1994 conviction for possession of drug paraphernalia likewise should not count as a prior conviction because "the conviction predates [Proposition 200]" and, therefore, "cannot be counted as a prior conviction." Green does not reassert this argument on appeal; therefore, we do not address it further. See State v. Roseberry , 210 Ariz. 360, n.10, 111 P.3d 402 (2005).

Even if such solicitation had matured into the substantive offense, sale of a narcotic drug, that offense would not fall within the plain meaning of personal possession. See § 13-901.01(C) ; but see Goddard v. Superior Court , 191 Ariz. 402, ¶ 14, 956 P.2d 529 (App. 1998).

Offenders with prior convictions for violent crimes are rendered ineligible in § 13-901.01(B).

Apart from crimes of personal possession, nothing in the statute suggests that the number of other non-violent criminal convictions should have any bearing on whether the offender is entitled to probation for a first or second personal-possession offense. See § 13-901.01(B) ; Gray , 195 Ariz. 273, ¶¶ 4, 17, 987 P.2d 759 (felony conviction for forgery not a prior conviction under § 13-901.01 ).