349 P.2d 774

STATE of Arizona ex rel. Robert MORRISON, The Attorney General, Appellant,

v.

William Roy ANWAY and Betty Lou Anway, husband and wife, Louis E. Anway and Erma E. Anway, husband and wife, Herschel Saunders and Gertrude Saunders, husband and wife, Appellees.

No. 6646.

Supreme Court of Arizona.

Feb. 24, 1960.

Rehearing Denied March 29, 1960.

Wade Church, Atty. Gen., Leslie C. Hardy, Chief Asst. Atty. Gen., Stanley Z. Goodfarb, Asst. Atty. Gen., for appellant.

McCarty, Chandler, Tullar & Udall, Tucson, for appellees.

Snell & Wilmer, Jennings, Strouss, Salmon & Trask, and J. A. Riggins, Jr., Lewis, Roca, Scoville, Beauchamp & Linton and John P. Frank, Phoenix, Reed, Wood & Platt, Coolidge, and Merchant, Parkman, Miller & Pitt, Tucson, amici curiae.

STRUCKMEYER, Chief Justice.

This action was brought by the Attorney General of the State of Arizona at the request of the State Land Commissioner to restrain appellees from pumping water and irrigating lands located in an area designated as a critical ground water area. The court below entered summary judgment in favor of appellees on the allegation of the State's complaint, and this appeal followed.

William Roy Anway and Betty Lou Anway, husband and wife, and Louis E. Anway and Erma E. Anway, husband and wife, are the owners of certain lands in

Pima County, Arizona; and they, together with Herschel Saunders and Gertrude Saunders, husband and wife, are engaged in cultivating these lands. Although the lands are within an area designated as a critical ground water area, they have diverted and are continuing to divert well waters onto lands not in cultivation prior to 1957. In order to effect the diversion, appellees have caused other lands in the same, or in a greater amount, to be taken out of cultivation, thereby effecting a crop rotation from one parcel to another. The State asserts that the diversion of water to lands not previously in cultivation prior to 1957 is prohibited either by A.R.S. § 45–301 et seq. or chapter 42, Laws of 1953, or both.

### Title 45, chapter 1, Article 7.

It has been the recognized law of this state since 1904 that water filtrating or percolating through the soil beneath the surface of the land in undefined and unknown channels is a component part of the earth, having no characteristic of ownership distinct from the land itself and therefore belongs to the owner of the soil. Howard v. Perrin, 8 Ariz. 347, 76 P. 460; Maricopa County Municipal Water District No. 1 v. Southwest Cotton Co., 39 Ariz. 65, 4 P.2d 369. The rule as announced is a rule of property, and the rights acquired thereby are entitled to protection under the law.; consequently, the owner of overlying land may mine the subjacent water as long as it conforms to the doctrine of reasonable use. Bristor v. Cheatham, 75 Ariz. 227, 255 P.2d 173, reversing Bristor v. Cheatham, 73 Ariz. 228, 240 P.2d 185, 195.

In 1948, the state legislature, in recognition of the need for controlling the unrestricted depletion of the ground water of the state, enacted what is now chapter 1, art. 7, Title 45, herein called the Act of 1948. It establishes a method for determining the areas within the state which do not have sufficient ground water to provide a reasonably safe supply for irrigation at current rates of withdrawal and upon such determination prohibited the construction of new irrigation wells. This court held that the Act was constitutional, stating that "it should be emphasized that in critical areas the Act does not purport to regulate the use of ground water between owners of land in cultivation, * * *." Southwest Engineering Co. v. Ernst, 79 Ariz. 403, 291 P.2d 764, 767.

In considering the State's position, that the diversion of water to lands not previously in cultivation is prohibited by the Act of 1948, it should immediately be stated that the legislature did not, by express language, so declare; hence, if the conduct is prohibited, it is only because of an implication sought to be drawn from the language used. It should also be stated that except for the implication sought to be drawn from the language used, appellees

unquestionably, under the doctrine of reasonable use, would have the right to use the water from their wells in any manner that they think most beneficial to the enjoyment of the property.

■■ It is a universal rule that courts will not enlarge, stretch, expand, or extend a statute to matters not falling within its express provisions. We said, Barlow v. Jones, 37 Ariz. 396, 294 P. 1106, that courts cannot read into a statute something which is not within the manifest intention of the legislature as gathered from the statute itself. A departure from this rule is to alter the statute and legislate, and not to interpret. In spite of this obvious limitation on the court's duty, it is argued that because the Act of 1948 requires all persons owning or operating wells for irrigation to report the location thereof and the legal description of the land on which the water is used, subsection B, A.R.S. § 45–304, the legislature must have intended to *limit the use of the water withdrawn from such wells to the land covered by the legal description.* Otherwise, such requirements would be superfluous.

This argument might have some merit if in fact there could be found no other purpose in the provision, but it falls far short of conviction when considered in the light of the additional statutory requirement that the information must be kept as a permanent record—without differentiation as to whether the well is located in a critical area, subsection C, A.R.S. § 45–304. The obvious reason for requiring information to be kept as a permanent record is to have it available for use by the legislature, the various state departments and agencies, and interested members of the public as the need arises. We note that the language referred to is derived from chapter 12, Laws of 1945, which Act directed the State Land Commissioner to cooperate with the United States Geological Survey in securing information for a report on the supply of ground water in Arizona. The supply is not, of course, static. It varies, dependent upon many factors, some known, some possibly as yet unknown, and therefore must necessarily be the subject of constant reappraisal in the light of the collected information.

A similar argument has been addressed to the provisions of the Act requiring the legal description of the land upon which the well is to be drilled and used, A.R.S. § 45–305; where a permit to construct a well within a critical area is desired, A.R.S. § 45–313; where a change of well location is desired, A.R.S. § 45–315; where it is desired that a well be replaced or deepened, A.R.S. § 45–316. So many useful purposes are obviously shown in requiring that the information be kept and preserved that further discussion is deemed unnecessary.

Chapter 42, Laws of 1953.

■ The State also argues that the transfer of the water by appellees is prohibited by chapter 42, Laws of 1953, herein called the Act of 1953. Subsection (a) of § 2 thereof provides:

"All of the area within the following described boundaries to wit: [herein is described the boundaries of the restricted area]; is hereby closed to new agricultural development through the use of ground water and no land within said area which has not been in cultivation within five years prior to the effective date of this Act shall be irrigated by ground water after the effective date of this Act; * * *."

We would be inclined to agree with the State that were the quoted language still in effect, it would bar the appellees from using ground water on new cultivated land, since their lands are wholly within the prescribed restricted area.

In discussing the applicability of the Act of 1953, the parties to this cause have referred this court to certain rules of statutory construction by which the intention of the legislature may be derived if a statute or a portion thereof is omitted from a revision. The parties have centered on this issue because under the Revision of 1956 all of subsection (a) § 2, above quoted, was deleted. We note that the Code Commissioner carried forward the questioned portion of the Act of 1953, but it failed to pass into the revision. The following notation was inserted as a revisor's note: "The provisions are deleted as executed." The deliberate deletion of all reference thereto in the Act of 1953 would ordinarily be sufficient to compel the conclusion that the legislature in 1956 intended to repeal the whole Act of 1953, A.R.S. § 1–102 were it not for A.R.S. § 1–104 providing that the adoption and enactment of these Revised Statutes shall not be construed to repeal or in any way to affect or modify any special, local or temporary laws. Since the quoted portion of the Act of 1953 is manifestly a statute limited in its operation to a particular area of the state unless it was repealed prior to the adoption of the 1956 Revised Statutes, it would be carried over and saved by the foregoing express legislative declaration.

A.R.S. § 1–245 (formerly § 1–104, A.C. A.1939) provides:

"When a statute has been enacted and has become a law, no other statute or law, is continued in force because it is consistent with the statute enacted, but in all cases provided for by the subsequent statute, the statutes, laws and rules, theretofore in force, whether consistent or not with the provisions of the subsequent statute, unless expressly continued in force by it, shall be deemed repealed and abrogated."

This section is a legislative codification of the generally accepted rule that a subsequent statute repeals an earlier statute, particularly if the two are in conflict or are inconsistent. We said in Olson v. State, 36 Ariz. 294, 285 P. 282, 285

"It being true, therefore, that the last expression of the legislature on any subject is the law whether the old statute be consistent therewith or not, the only way by which provisions of the old not inconsistent with those of the new dealing with the same subject matter may be continued is by express language to that effect, and when this does not appear a repeal by implication is the result."

Accordingly, the Act of 1953 must be held to be repealed if there has been a further and later expression by the legislature on the same subject matter.

Before directing our inquiry into whether the Act of 1953 was repealed at the time of the adoption of the Revised Statutes of 1956, a brief examination into the history of ground water legislation in this state will be of assistance. The Act of 1953 was adopted as an emergency measure because the ground water code of 1948 had not proven wholly effective in restraining the use of water. It was unquestionably stopgap legislation, intended to lapse at midnight on March 31, 1954. This is clearly established by the communication of the Governor of Arizona to the Secretary of State on March 31, 1954, in which he expressed his disappointment in the failure of the legislature to adopt a code which in his opinion would more soundly conserve underground water supplies, pointing out:

"When, by this morning, it was quite obvious that no progress on the code was being made, and being cognizant that chapter 42 would expire at midnight tonight, I addressed the following letter to President Hubert Merryweather of the Senate * * *." Laws of 1954, second regular session, page 123.

A partial reason for the lack of effectiveness of the Ground Water Code of 1948 was the delay in declaring areas critical. The delay was occasioned by the requirement of the statute that the State Land Commissioner hold hearings and make certain findings before a critical ground water area could be proclaimed. Between the passage of the Ground Water Code of 1948 and the adoption of the Act of 1953, many landowners, in order to secure a vested right to the use of the underlying water, were rapidly completing wells prior to the time when their lands would be declared critical.

In 1952, the legislature took a step toward examining deficiencies in the Ground Water Code when it established the Un-

derground Water Commission which was empowered to study the ground water situation and to make recommendations to the legislature, chapter 49, Laws of 1952. After receiving the report of the Underground Water Commission, the legislature enacted the Act of 1953 which contained, inter alia, subsection (a), § 2, quoted above, and subsection (b), § 2. The latter subsection prohibited the drilling of further irrigation wells in the restricted area until March 31, 1954. Thus, by the Act of 1953, the use of ground water as well as the drilling of new irrigation wells in the restricted area was temporarily curtailed.

In 1954, the legislature passed two Acts which affected the Act of 1953. The first of these was chapter 86, Laws of 1954. It extended both the life of the Underground Water Commission and the restriction against drilling new irrigation wells as provided in the Act of 1953 for an additional year until March 31, 1955. No reference was made in chapter 86 of the restriction contained in subsection (a), § 2 of the Act of 1953 forbidding the use of ground water on lands not previously in cultivation.

The second measure affecting the Act of 1953 was chapter 160, Laws of 1954. The first section abolished the Underground Water Commission and transferred its duties to the State Land Commissioner, § 1, chapter 160. Section 2 specifically directed the State Land Commissioner to determine the sufficiency of the ground water in the area set forth in the Act of 1953 in accordance with the procedures established by the Ground Water Code of 1948, and forbid the issuance of permits for the drilling of wells until such proceedings were completed.[1] It is apparent from the most

1. Chapter 160, Laws of 1954:

"Sec. 2. Critical Ground-Water Areas. (a) All areas heretofore designated as critical ground-water areas under the provisions of the groundwater code of 1948 shall remain critical groundwater areas in accordance with the provisions of such code and shall in addition be subject to all of the provisions of this Act.

"(b) Immediately upon the enactment of this Act, the commissioner shall promptly publish notices of hearings to designate as a critical groundwater area or as critical groundwater areas the whole of so much of the restricted area described in chapter 42, twenty-first legislature, first regular session, as is not already designated as critical groundwater areas and which appear from factual data not to have sufficient groundwater to provide a reasonably safe supply for irrigation of the cultivated lands therein at current rates of withdrawal, and shall promptly undertake the hearings, proceedings and actions authorized and provided by the groundwater code of 1948 in reference thereto.

"(c) No permit shall be issued for drilling a new well for the purpose of irrigating land not already under cultivation, nor shall any permit be issued for any well to irrigate such land when such land lies within the restricted area described in sub-paragraph (b) hereof, pending the completion by the commissioner of the proceedings and actions required by sub-paragraph (b) hereof.

casual perusal of § 2, chapter 160, that it embraces the same subject matter as the Act of 1953 in that the State Land Commissioner was required to determine the critical nature of the area from factual data as distinguished from legislative declaration, and on such determination to act in accordance with the mandates of the 1948 Act. By subsections (b) and (c), § 2, chapter 160, the legislature freed the restricted area established in the Act of 1953 for use of ground water under the supervision of the State Land Commissioner and the provisions of the Ground Water Code of 1948. Accordingly, we hold that A.R.S. § 1–245, then A.C.A. § 1–104 (1939) operates to repeal and abrogate the Act of 1953.

We are reinforced in our conclusions by the possible absurdity which might occur were our decision otherwise. Since subsection (b), § 2, chapter 160, directed the State Land Commissioner to hold hearings to determine whether the land in the restricted area was actually critical, an implication arises that some of the lands might have a sufficient supply of ground water so that they could not be placed in the critical category. If the Act of 1953 continued in existence after the State Land Commissioner had examined into the water supply of the land embraced within the restricted area, there might arise the anomalous situation that land which had sufficient water to be excluded from the category of critical within the meaning of the Ground Water Code would nevertheless not be subject to cultivation by virtue of the express language of the Act of 1953. This would mean that even though there were sufficient water for irrigating the land, the owner could not use the water. We are convinced that the legislature did not intend such an absurd result. Cf. Garrison v. Luke, 52 Ariz. 50, 78 P.2d 1120.

For the foregoing reasons the judgment of the court below is affirmed.

JOHNSON and BERNSTEIN, JJ., and WILLIAM W. NABOURS, Superior Court Judge, concurring.

UDALL, J., having disqualified himself, the Honorable WILLIAM W. NABOURS, Judge of the Superior Court of Yuma County, Arizona, was called to sit in his stead and participate in the determination of this appeal.

PHELPS, Justice (dissenting).

"(d) Notwithstanding any provision of this Act or the groundwater code of 1948, no groundwater shall be used for irrigation purposes from any well which was drilled in violation of the provisions of the groundwater code of 1948 or the provisions of chapter 42, twenty-first legislature, first regular session, nor shall groundwater from a well within the definition of 'exempted well' as defined in the groundwater code of 1948 be used for irrigation purposes."

I regret that I am unable to agree with the majority. I did not agree with the majority opinion in Bristor v. Cheatham, 75 Ariz. 227, 255 P.2d 173, in which it was held that underground percolating waters belonged to the owner of the surface of the soil to which they are subjacent and I do not now agree with it because I think the majority ignored the Desert Land Act passed by Congress in 1877, 43 U.S.C.A. § 321 which effected a severance from the land of *all waters* upon and under the public domain. Neither did I agree with the majority opinion in Southwest Engineering Co. v. Ernst, 79 Ariz. 403, 291 P.2d 764, wherein it was held that the Act known as the 1948 Water Code was constitutional. But as a member of this Court I am bound by both of those decisions.

Therefore as I interpret Bristor v. Cheatham, supra, it holds that the decision of this Court in Howard v. Perrin, 8 Ariz. 347, 76 P. 460, is that waters percolating through the soil beneath the surface are the property of the owner of the surface to which they are subjacent. The decisions in the Bristor case then proceeds to pronounce the law of that case under the doctrine of reasonable use to be that [75 Ariz. 227, 255 P.2d 180]:

"This rule [of reasonable use] does not prevent the extraction of ground water subjacent to the soil so long as it is taken in connection with a *beneficial enjoyment of the land from which it is taken.* * * *" (Emphasis supplied.)

The Court then points out that:

"A great majority of the states which in recent years have been presented with this problem adhere to the principle that the owner of lands overlying ground waters may freely, without liability to an adjoining user, use the same without limitation and without liability to another owner, providing his use thereof is for the purpose of reasonably putting the *land from which the water is taken* to a beneficial use. * * *" Citing cases. [Emphasis mine.]

The decision then states there is a marked tendency in American jurisdictions in later years away from the doctrine that the right of the owner is unqualified and that there is an ever increasing tendency toward the viewpoint:

" ' * * * that their use must be *limited to purposes incident to the beneficial enjoyment of the land from which they* [percolating waters] *are obtained.* * * *' "

The appellee in this case as I understand the record is taking the water from the well on land to which the waters therefrom have previously been applied and to which they were subjacent, and applying them to other lands not previously cultivated and permitting the land previously

·cultivated, from which said waters had been subjacent, to lie fallow. This appears to me to be a violation of the rule laid down in the Bristor case, supra, in that it withdraws the waters from one tract of land permitting them to be conveyed in alternate years or in alternate crops to another tract of land which never before had been in cultivation.

It is claimed that appellee is using no more water than he would use if applied to the original tract. I think the fact is too well established as a matter of public knowledge that lands in irrigation areas, as well as elsewhere, are required to have periods of rest or fallow in order to get the best results in productivity. There is nothing in this case to indicate how far the water is conveyed to the newly cultivated land. But it is also an undisputable fact that the farther water is carried in an open ditch from its source the greater is the loss, both from seepage and evaporation. This being true the conclusion is irresistible that a greater quantity of waters are withdrawn from the critical area than would be if the waters were applied to the land to which it is subjacent.

It is clear to me that the Bristor case holds that the water must be applied to the soil to which it is subjacent.

I do not believe Chapter 160, Session Laws of 1954, have in any way modified the holding in the Bristor case, supra. On the other hand, Section 2, subsection (c) thereof indicates the contrary. It reads as follows:

"No permit shall be issued for drilling a new well for the purpose of irrigating land not already under cultivation, *nor shall any permit be issued for any well to irrigate such land when such land lies within the restricted area described in sub-paragraph (b) hereof, pending the completion by the commissioner of the proceedings and actions required by sub-paragraph (b) hereof.*" [Emphasis supplied.]

It seems that the above language justifies the interpretation that no waters from any well shall be permitted to irrigate any land other than that to which they are subjacent in an area designated as critical which is not then in cultivation until the water commissioner completes the survey directed therein to be conducted by him. The record is silent as to whether this survey has been completed.

The Bristor decision interpreting the applicable statutory law is a mandate to the water commissioner in my opinion to not permit the conveyance of percolating waters to lands from which such waters are not subjacent. I am therefore of the view that the commissioner is mandated to refuse the appellee the right to withdraw waters from beneath the surface of a tract of land upon which such water has been

applied to a beneficial use and convey it or any part of it and apply it upon another tract not theretofore under cultivation. This is true whether it does or does not lessen the use of his neighbor to such percolating waters.

It is therefore my view that the judgment of the lower court should be reversed with directions to enter judgment for the appellant.