IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**IN RE:**
**ERICA KRYSTAL RIGGINS,**
*Debtor.*

No. CV-23-0123-CQ
Filed March 7, 2024

Certified Question from the United States Bankruptcy Court
The Honorable Paul Sala, Judge
No. 2:22-bk-08511-PS
**QUESTION ANSWERED**

COUNSEL:

Kenneth L. Neely, Nicholas T. Van Vleet, Geoffrey M. Khotim, Neeley Law Firm, PLC, Chandler, Attorneys for Erica Krystal Riggins

Theodore P. Witthoft, Rusing Lopez & Lizardi, P.L.L.C., Scottsdale, Attorneys for David A. Birdsell

James E. Barton, II, Jacqueline Mendez Soto, Daniella Fernandez Lertzman, Barton Mendez Soto PLLC, Tempe, Attorneys for Amicus Curiae Arizonans Fed Up With Failing Healthcare

Pamela Bridge, Community Legal Services, Phoenix; J. Leslie McLean, DNA People's Legal Services, Flagstaff; Anthony L. Young, Alan R. Solot, Southern Arizona Legal Aid, Tucson; and Andrew P. Schaffer, Brenda Munoz Furnish, Michelle Johnson Simpson, William E. Morris Institute for Justice, Phoenix, Attorneys for Amici Curiae Community Legal Services, DNA People's Legal Services, Southern Arizona Legal Aid, and William E. Morris Institute for Justice

Kristin K. Mayes, Arizona Attorney General, Hayleigh S. Crawford, Deputy Solicitor General, Luci D. Davis, Assistant Attorney General, Phoenix, Attorneys for Amicus Curiae Arizona Attorney General's Office

April Maxwell, Maxwell Law Group, Mesa, Attorneys for Amicus Curiae

Arizona Consumer Bankruptcy Counsel, LLC

_____

JUSTICE LOPEZ authored the Opinion of the Court, in which VICE CHIEF JUSTICE TIMMER, JUSTICES MONTGOMERY and KING joined. JUSTICE BOLICK, joined by CHIEF JUSTICE BRUTINEL and JUSTICE BEENE, dissented.

_____

JUSTICE LOPEZ, Opinion of the Court:

**¶1** The United States Bankruptcy Court for the District of Arizona certified the following question for our review: "Whether the passage of Proposition 209 [("Prop. 209")] repealed or affected the validity of A.R.S. § 33-1126(A)(11) [("subsection (A)(11)")]."

**¶2** We hold that the voters did not expressly repeal subsection (A)(11) by passing Prop. 209. Subsection (A)(11) did not exist when Prop. 209 was drafted and circulated; thus, subsection (A)(11) was not presented to the voters for consideration. We further hold that because Prop. 209 does not conflict with subsection (A)(11), it did not implicitly repeal the subsection and we give effect to both legislative enactments. Thus, subsection (A)(11) remains operable.

## BACKGROUND

**¶3** On July 6, 2022, Governor Ducey signed Senate Bill 1222 ("S.B. 1222"). *See* 2022 Ariz. Sess. Laws ch. 346, § 1 (2d Reg. Sess.). This bill amended A.R.S. § 33-1126, which governs the exemptions a debtor may claim over certain types of money assets. In addition to making minor stylistic changes throughout the statute, S.B. 1222 created a new exemption—subsection (A)(11)—for certain kinds of federal and state tax credits.

**¶4** On the same day the Governor signed S.B. 1222 into law, Prop. 209's proponents filed the initiative petition with the Arizona Secretary of State (the "Secretary") for inclusion on the November ballot. Prop. 209 was a comprehensive initiative measure that purported to constrain "predatory debt collection" by amending several existing Arizona

statutes, including § 33-1126. In § 33-1126(A)(9), Prop. 209 added an inflation index to the bank-account exemption and increased its value from $300 to $5,000. Prop. 209 did not otherwise amend § 33-1126. Voters approved Prop. 209 on November 8, 2022.

¶5 The version of § 33-1126 that Prop. 209 amended, however, did not include S.B. 1222's legislative amendments, namely the addition of subsection (A)(11). Arizona law provides that the text of proposed initiatives "shall indicate material deleted, if any, by printing such material with a line drawn through the center of the letters of such material and shall indicate material added or new material by printing the letters of such material in capital letters." A.R.S. § 19-123(A)(1); *accord* A.R.S. § 19-112(B). Prop. 209 completely omitted subsection (A)(11) from its text; it was not included as stricken, capitalized, or ordinary typeface text. *See* Ariz. Sec'y of State, 2022 Publicity Pamphlet 104–05 (2022), https://apps.azsos.gov/election/BallotMeasures/2022/azsos_2022_publi city_pamphlet_standard_english_web_version.pdf.

¶6 The reason for Prop. 209's omission of subsection (A)(11) is manifest—Prop. 209 was drafted and circulated for signatures well before the legislature passed S.B. 1222 and transmitted it to the Governor. The process of qualifying an initiative for the ballot is protracted and may take months or even years to complete. Initiative proponents must first apply for a serial number with the Secretary, and this application must include the "text of the proposed law." A.R.S. § 19-111(A). Next, the proponents must circulate their petition for signatures, and the signature sheets "shall be attached to a full and correct copy of the title and text of the measure." Ariz. Const. art. 4, pt. 1, § 1(9); *accord* A.R.S. §§ 19-112(B)–(C), -121(A)(3). "The text shall indicate material deleted, if any, by printing the material with a line drawn through the center of the letters of the material and shall indicate material added or new material by printing the letters of the material in capital letters." A.R.S. § 19-112(B) (addressing requirements for signature sheets).

¶7 Initiative petitions must then be "filed with the secretary of state not less than four months preceding the date of the election." Ariz. Const. art. 4, pt. 1, § 1(4). Upon a successful filing, the Secretary

> shall cause to be printed . . . a publicity pamphlet that contains . . . [a] true copy of the title and text of the measure

3

or proposed amendment. Such text shall indicate material deleted, if any, by printing such material with a line drawn through the center of the letters of such material and shall indicate material added or new material by printing the letters of such material in capital letters.

A.R.S. § 19-123(A)(1). Here, because the 2022 election was scheduled on November 8, the filing deadline for Prop. 209 occurred in early July.

**¶8** Although the Governor signed S.B. 1222 into law on July 6, it did not take effect until September 24 because the Arizona Constitution delays the effective date of non-emergency legislation to allow challenges via referendum. *See* Ariz. Const. art. 4, pt. 1, § 1(3). Thus, subsection (A)(11) did not legally exist at any point during Prop. 209's qualification process, and it did not become operative until well after Prop. 209's filing deadline.

**¶9** On December 27, 2022, Erica Riggins ("Debtor") filed the Chapter 7 bankruptcy petition giving rise to this certified question. In her petition, Debtor claimed an exemption under subsection (A)(11). The Chapter 7 Trustee ("Trustee") objected to Debtor's claimed exemption, arguing that Prop. 209 repealed the subsection (A)(11) exemption. Observing that "hundreds of bankruptcy cases with the same issue are currently pending in the Arizona Bankruptcy Court," and noting the absence of Arizona authority "addressing whether a voter initiative can repeal or affect a statutory provision that became effective after the submission of the initiative to the Arizona Secretary of State," the bankruptcy court certified this question to us. We accepted review to resolve this issue pursuant to our jurisdiction under article 6, section 5(6) of the Arizona Constitution and A.R.S. § 12-1861.

## DISCUSSION

**¶10** We review a question of statutory construction de novo. *BSI Holdings, LLC v. Ariz. Dep't of Transp.*, 244 Ariz. 17, 19 ¶ 9 (2018).

**I.**

**A.**

¶11        Trustee argues that Prop. 209 expressly and implicitly repealed subsection (A)(11).  We first consider whether Prop. 209 expressly repealed the subsection.

¶12        "When interpreting statutes, we begin with the text." *Franklin v. CSAA Gen. Ins. Co.*, 255 Ariz. 409, 411 ¶ 8 (2023).  "We interpret statutory language in view of the entire text, considering the context and related statutes on the same subject." *Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019).  If a statute's text is plain and unambiguous, it controls unless it results in an absurdity or a constitutional violation. *4QTKIDZ, LLC v. HNT Holdings, LLC*, 253 Ariz. 382, 385 ¶ 5 (2022).  However, "if the statute is ambiguous, we consider secondary principles of statutory interpretation, such as the context of the statute, the language used, the subject matter, its historical background, its effects and consequences, and its spirit and purpose." *Ariz. Citizens Clean Elections Comm'n v. Brain*, 234 Ariz. 322, 325 ¶ 11 (2014) (citation omitted) (internal quotation marks omitted).  "A cardinal principle of statutory interpretation is to give meaning, if possible, to every word and provision so that no word or provision is rendered superfluous." *Nicaise*, 245 Ariz. at 568 ¶ 11.

¶13        There is no dispute that an initiative that proposes statutory amendments by deleting text shall "indicate material deleted, if any, by printing such material with a line drawn through the center of the letters of such material."   A.R.S. § 19-112(B); *accord* A.R.S. § 19-123(A)(1).   The purpose of this requirement is "to call attention to" the amended language. *Wilhelm v. Brewer*, 219 Ariz. 45, 49 ¶ 18 (2008).

¶14        Here, Prop. 209 failed to notify voters that it would repeal or otherwise affect subsection (A)(11) because the subsection was omitted from (1) the application for serial number filed with the Secretary (A.R.S. § 19-111(A)); (2) the petition sheets that voters signed (A.R.S. § 19-112(B)–(C)); and (3) the publicity pamphlet (A.R.S. § 19-123(A)(1)).  Consequently, voters were not apprised of subsection (A)(11)'s existence, much less Prop. 209's purported design to excise it, when voting on Prop. 209.  Therefore, the Prop. 209 text that voters approved is the statutory text contained in the publicity pamphlet that omits subsection (A)(11).

**¶15** Where Arizona statutes require ballot materials to affirmatively notify voters of a proposed express repeal by strikethrough text, we are reticent to conclude that an express repeal can be accomplished in any other manner. A contrary conclusion would contravene the purpose of the strikethrough requirement to notify voters of the proposed statutory amendment, *see Wilhelm*, 219 Ariz. at 49 ¶ 18, and render the statutory strikethrough requirement mere surplusage, *see Nicaise*, 245 Ariz. at 568 ¶ 11.

**¶16** Trustee acknowledges that Prop. 209 fails to eliminate subsection (A)(11) by strikethrough text because it omits any reference to the subsection. Nonetheless, Trustee argues that Prop. 209's prefatory language that § 33-1126 "is amended to read" achieves the same result because it supplants the entirety of the existing statute, including subsection (A)(11), with the ensuing text.

**¶17** Trustee is correct that Prop. 209 informed voters through a prefatory clause that "[s]ection 33-1126, Arizona Revised Statutes, is amended to read." *See* 2022 Publicity Pamphlet at 104. Prop. 209's proposed amendments to the statute following the prefatory statement contained strikethrough text indicating that subsection (A)(9)'s "~~three hundred dollars~~" was to be repealed and replaced by "$5,000," as well as a lengthy provision written entirely in capital letters adopting a new inflation index. As discussed, Prop. 209 did not include any reference to subsection (A)(11), nor could it.

**¶18** Trustee's position that a prefatory clause similar to Prop. 209's repeals any other statutory provision absent from the initiative's text is enticing in its simplicity, but it is inconsistent with our jurisprudence. In *Territory v. Ruval*, 9 Ariz. 415 (1906), we held that:

> [W]here an amendment is made by declaring that the original statute 'shall be amended so as to read as follows,' retaining part of the original statute and incorporating therein new provisions, the effect is not to repeal, and then re-enact, the

part retained, but such part remains in force as from the time of the original enactment.

*Id.* at 417 (quoting Black on Interpretation of Laws, § 133).

**¶19**     We later held in *Arizona Downs v. Superior Court*, 128 Ariz. 73 (1981), that:

The challenged provision under which petitioner claims a preference for racing dates was left untouched by the amended provision. The result of such an amendment to [a statute] is not a repeal and re-enactment. The unamended portion of the original statute remains in force from the time of the original enactment.

*Id.* at 75 (citing *Ruval*, 9 Ariz. at 415). We extract from *Ruval* and *Arizona Downs* the principle that a prefatory clause similar to Prop. 209's, followed by proposed statutory amendments, leaves "untouched" existing statutory provisions that, as here, do not contain strikethrough text and are not subject to the proposed amendments. Thus, a provision "left untouched" by a subsequent amendment is not repealed.

**¶20**     Here, where our statutes require strikethrough text as an initiative's exclusive method to amend a statute by deletion and Prop. 209 employed this method to amend § 33-1126, the wholesale omission of subsection (A)(11) is tantamount to being "left untouched." Prop. 209 merely reflected what language it sought to delete and add; it was not an entire repeal and reenactment of the statute. *See Ariz. Downs*, 128 Ariz. at 75. Thus, Prop. 209 did not expressly repeal subsection (A)(11).

**B.**

**¶21**     Although we conclude that Prop. 209 did not expressly repeal subsection (A)(11), we address whether the proposition's effect on subsection (A)(11) is ambiguous. Even if we were to conclude that such ambiguity exists, it would not alter our conclusion.

¶22        Statutory ambiguity may arise for various reasons, and we have previously catalogued its myriad sources:

> An ambiguity in a statute is "not simply that arising from the meaning of particular words, but includes such as may arise in respect to the general scope and meaning of a statute when all its provisions are examined." 73 Am.Jur.2d, Statutes § 195. An ambiguity may also be found to exist where there is uncertainty as to the meaning of the terms of a statute. The problem in interpreting the statute at issue is not that certain words or groups of words have more than one meaning, but it is the failure to include necessary words which causes confusion as to the scope of the statute. Due to the omission the statute can reasonably be construed in more than one way.

*State v. Sweet*, 143 Ariz. 266, 269–70 (1985) (internal citation omitted).

¶23        Here, if an ambiguity exists, it is similar to the one in *Sweet*—omission of "necessary words." *See id.* Prop. 209 is silent on its effect on subsection (A)(11). One reasonable interpretation is that Prop. 209's opening sentence amending § 33-1126 renders the ensuing text the exclusive object of the voters' approval, irrespective of its silence on subsection (A)(11). Another equally reasonable reading of Prop. 209, however, is that voters did not intend to expressly repeal anything absent strikethrough text.

¶24        Entertaining the notion that Prop. 209's effect on the subsection may be ambiguous, we invoke other, including secondary, tools of statutory construction. *See Ariz. Citizens Clean Elections Comm'n*, 234 Ariz. at 325 ¶ 11. These interpretative aids reinforce our conclusion that Prop. 209 did not expressly repeal subsection (A)(11).

¶25        First, under the omitted-case canon, which we previously have applied, *see Silver v. Pueblo Del Sol Water Co.*, 244 Ariz. 553, 564–65 ¶ 41, 565 ¶ 41 n.4 (2018), "a matter not covered is to be treated as not covered," Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 93 (2012). Thus, it is appropriate to treat the omission of subsection (A)(11) from the ballot as an "omitted case" carrying no legal effect. In expressing neither approval nor disapproval of subsection (A)(11), the

voters did nothing. This inaction is the antithesis of expressly repealing subsection (A)(11).

¶26 Second, our rejection of Trustee's claim that Prop. 209 expressly repealed subsection (A)(11) also aligns with our consistent "reject[ion of] the idea that silence is an expression of legislative intent." *See Sw. Paint & Varnish Co. v. Ariz. Dep't of Env't Quality*, 194 Ariz. 22, 26 ¶ 21 (1999); *Gersten v. Sun Pain Mgmt., P.L.L.C.*, 242 Ariz. 301, 304 ¶ 9 (App. 2017). In light of the requisite statutory method of using strikethrough text to accomplish repeals, the voters' passage of a measure that simply omitted subsection (A)(11) is tantamount to legislative silence, not an express repeal. Although we typically presume that voters know the law of the state, *City of Phoenix v. Butler*, 110 Ariz. 160, 162 (1973), that presumption is defeated where, as here, the voters were affirmatively led to believe that express repeals would be accomplished with strikethrough text in their ballot materials.

¶27 Third, Prop. 209's context, language, subject matter, historical background, effects and consequences, and spirit and purpose — the core secondary principles of statutory interpretation — demonstrate an enhancement of debtor protections through limited revisions to § 33-1126. Concluding that the electorate intended to repeal subsection (A)(11), which also enhances debtor protections, would be wholly inconsistent with Prop. 209's explicit purpose. *See Ariz. Citizens Clean Elections Comm'n*, 234 Ariz. at 325 ¶ 11.

## II.

¶28 Our conclusion that Prop. 209 did not expressly repeal subsection (A)(11) requires us to consider Trustee's argument that the voters implicitly repealed the subsection.

¶29 The doctrine of repeal by implication is disfavored in Arizona. *UNUM Life Ins. Co. of Am. v. Craig*, 200 Ariz. 327, 333 ¶ 28 (2001). "Rather, when two statutes appear to conflict, whenever possible, we adopt a construction that reconciles one with the other, giving force and meaning to all statutes involved." *Id.* This statutory harmonization principle is readily applied here because Prop. 209 and subsection (A)(11) do not conflict — Prop. 209 and subsection (A)(11) both enhance debtor protections;

Prop. 209 increased the value of a bank-account exemption and indexed it for inflation, while subsection (A)(11) added a tax-credit exemption.

**¶30** Despite Prop. 209 and subsection (A)(11)'s harmonious pro-debtor purposes, Trustee argues that Prop. 209's inclusion of ten exemptions necessarily excludes all others, including subsection (A)(11). We reject this invocation of the *expressio unius* canon. *See City of Surprise v. Ariz. Corp. Comm'n*, 246 Ariz. 206, 211 ¶ 13 (2019) (noting that the interpretative canon *expressio unius est exclusio alterius* means "the expression of one item implies the exclusion of others"). First, the *expressio unius* canon should be used with caution; it is appropriate "only when the unius . . . can reasonably be thought to be an expression of *all* that shares in the grant or prohibition involved." Scalia & Garner, *supra*, at 107 (emphasis in original). There is no reason to assume that Prop. 209's ten provisions were intended to represent the entire universe of available money-asset exemptions. *See* A.R.S. § 33-1133(A) ("Nothing in this article shall be construed to displace other provisions of law which afford additional or greater protection to a debtor's property."). In fact, § 33-1126 is merely one statute in a complex property scheme that spans numerous statutes. *See, e.g.*, A.R.S. § 33-1131 (setting forth exemptions pertaining to "a debtor's wages, salary or compensation"); *see generally* A.R.S. §§ 33-1121 to -1133 (setting forth Arizona's various personal property exemptions). Second, neither the initiative proponents nor the voters crafted the ten exemptions contained in Prop. 209's amended version of § 33-1126. These legislative exemptions already existed, and the voters merely sought to amend one of them to enhance debtor protections. The legislature enacted subsection (A)(11) with precisely the same purpose and effect. And, as noted, "[t]he result of such an amendment to [a statute] is not a repeal and re-enactment." *Ariz. Downs*, 128 Ariz. at 75.

**¶31** The parties urge us to consider voter intent to resolve this case. Although voter intent may be relevant to an implicit repeal analysis, *Lemons v. Superior Court*, 141 Ariz. 502, 505 (1984), we need not consider it here because there is no conflict between the pro-debtor purpose and effect of Prop. 209 and subsection (A)(11). Prop. 209 did not implicitly repeal subsection (A)(11).

**III.**

**¶32**        The dissent contends that we err in applying an implicit repeal analysis and, instead, would hold that Prop. 209 repealed subsection (A)(11) "not by implicit repeal but by operation of law." *Infra* ¶ 52. For this proposition, the dissent relies on A.R.S. § 1-245,[1] which provides in relevant part that a former statute is "deemed repealed and abrogated" "in all cases provided for by [a] subsequent statute," regardless of whether the provisions of the former statute are "consistent or not with the provisions of the subsequent statute." *Id.* In essence, the dissent claims that § 1-245, alone, resolves this certified question, thereby obviating the need for an implicit repeal analysis. But, as the dissent recognizes, § 1-245 is simply "a legislative codification of the generally accepted rule that a subsequent statute repeals an earlier statute, particularly if the two are in conflict or are inconsistent." *Id.* ¶ 53 (quoting *State ex rel. Morrison v. Anway*, 87 Ariz. 206, 211 (1960)). Thus, the distinction that the dissent draws between "implicit repeal" and "operation of law" is illusory.

**¶33**        Our implicit repeal jurisprudence is inextricably intertwined with § 1-245's substantive command. Indeed, the doctrine of implicit repeal provides the mechanism by which our courts determine whether a subsequent statute "provide[s] for" the same "cases" as a former statute, a necessary prerequisite for applying § 1-245. In fact, § 1-245 deems as repealed *only* those former statutes that address "cases provided for by the subsequent statute." Thus, when we inquire whether two legislative enactments conflict, we are merely determining whether § 1-245's trigger condition has been met. The dissent does not cite any authority to the contrary. And the dissent's reliance on *Anway* only reinforces this conclusion because that case expressly ties § 1-245's application to an antecedent determination that two statutes "are in conflict or are

---

[1] A.R.S. § 1-245 provides in full:

> When a statute has been enacted and has become a law, no other statute or law is continued in force because it is consistent with the statute enacted, but in all cases provided for by the subsequent statute, the statutes . . . theretofore in force, whether consistent or not with the provisions of the subsequent statute, unless expressly continued in force by it, shall be deemed repealed and abrogated.

inconsistent." *See infra* ¶ 53; 87 Ariz. at 211; *see also Hounshell v. White*, 219 Ariz. 381, 385–86 ¶¶ 12–13 (App. 2008) (noting that § 1-245 is a source of implicit repeal).

¶**34**      Moreover, § 1-245 is not a true repealing statute. Rather, it dictates that certain statutes "shall be *deemed* repealed" in certain "cases provided for by the subsequent statute" and provides a method by which a court can determine which of two applicable statutes, both of which address the same substantive issue, controls in a given case. (Emphasis added.) Although § 1-245 deems "consistency" between two statutes irrelevant, we clarify that our consideration of statutory "inconsistency," both in this case and in our implicit repeal jurisprudence generally, is aimed at the antecedent question of whether two statutes "provide[] for" the same "cases." *See, e.g.*, *Anway*, 87 Ariz. at 211. If the statutes are in conflict or are inconsistent, the subsequent statute controls, regardless of any consistency of purpose, spirit, or effect. In any event, although § 1-245 provides that the subsequent statute controls even if two statutes are consistent, whatever the proper construction and general ambit of § 1-245, it is not dispositive of this certified question because Prop. 209 does not in any manner address federal or state tax-credit exemptions, the subject matter of subsection (A)(11).

¶**35**      The dissent offers only a conclusory statement that the presence of a tax-credit exemption constitutes a "case[] provided for by" Prop. 209. In an attempt to implicate the *expressio unius* canon, the dissent asserts that "Prop. 209 *enacted* a comprehensive scheme governing bankruptcy exemptions." *Infra* ¶ 49 (emphasis added). If true, we would embrace the dissent's ultimate conclusion. But, as noted, Prop. 209 did not enact a comprehensive scheme. Rather, it merely amended one preexisting, unrelated exemption in § 33-1126(A)(9), a single statutory subsection in a complex property scheme that spans numerous statutes—an act distinguishable from a reenactment of a comprehensive statutory scheme. *See* Part I(A) ¶¶ 18–20; Part II ¶ 30; *Ruval*, 9 Ariz. at 417; *Ariz. Downs*, 128 Ariz. at 75. This conclusion is bolstered by Prop. 209's 100-word description which, in part, describes its limited revisions to "[i]ncrease[] the value of assets—a homestead, certain household possessions, a motor vehicle, funds in a single bank account, and disposable earnings—protected from certain legal processes to collect debt" and to "[a]nnually adjust[] these amended exemptions for inflation beginning 2024." *See Protect Our Arizona v. Fontes*, 254 Ariz. 288, 291 ¶ 2 (2023) (providing a full quotation of Prop. 209's 100-word description). *Expressio unius* therefore is inapplicable here. *See*

Part II ¶ 30. And without *expressio unius*, there is no colorable argument that subsection (A)(11)'s tax-credit exemption is a "case[] provided for by" Prop. 209.

¶36        Contrary to the dissent's conclusion, § 1-245 does not operate to repeal subsection (A)(11) for purposes of this certified question. Thus, we are left with the long-established principle that, unless there is an express "repealing clause," "it is the rule that when a law is amended by adding thereto, all portions of the law are to be given effect, if possible, and only those earlier portions which cannot be reconciled reasonably with the later and added enactment are considered as repealed." *Biles v. Robey*, 43 Ariz. 276, 281 (1934). Subsection (A)(11) remains operative.

**IV.**

¶37        This case does not turn on the Voter Protection Act ("VPA"), but it does implicate its principles and purpose to deter the legislature's frustration of voter initiatives. The VPA prohibits the legislature from amending a voter-passed measure "unless the amending legislation furthers the purposes of such measure" and a supermajority of legislators supports the amendatory legislation. Ariz. Const. art. 4, pt. 1, § 1(6)(C). Here, because the legislative act preceded the voter initiative, the VPA is inapplicable. Nevertheless, we explain why our holding accords with the VPA's purpose.

¶38        The VPA "altered the balance of power between the electorate and the legislature, which share lawmaking power under Arizona's system of government." *Ariz. Early Childhood Dev. & Health Bd. v. Brewer*, 221 Ariz. 467, 469 ¶ 7 (2009). "Backers of the measure were concerned that the legislature was abusing its power to amend and repeal voter-endorsed measures." *Id.* Thus, the VPA serves as a defensive bulwark protecting "Arizona's strong public policy favoring the initiative and referendum." *See W. Devcor, Inc. v. City of Scottsdale*, 168 Ariz. 426, 428 (1991); *Ariz. Free Enter. Club v. Hobbs*, 253 Ariz. 478, 482 ¶ 7 (2022).

¶39        We are cognizant that our holding in this case — that voters do not expressly repeal statutory provisions omitted from an initiative that delineates repeals exclusively by strikethrough text — may be perceived to risk mischief by the legislature that the VPA is designed to avert. This concern, however, is misplaced. First, if the legislature enacts or amends a

statute that affects a pending initiative, the more recently enacted voter-approved measure will prevail if the two laws conflict. *See UNUM*, 200 Ariz. at 333 ¶ 29 ("Generally, where it appears by reason of repugnancy, or inconsistency, that two conflicting statutes cannot operate contemporaneously, the 'more recent, specific statute governs over [an] older, more general statute.'" (alteration in original) (quoting *Lemons*, 141 Ariz. at 505)). Second, the VPA's purpose is to prevent *subsequent* legislative amendments and repeals. To be sure, a voter-approved measure will retain the VPA's protections prospectively. Thus, our holding is consistent with the VPA's protection of voter-enacted laws.

¶**40** Prop. 209, itself, illustrates the principle that a more recently enacted voter-approved measure will prevail if it conflicts with a legislative enactment passed during the pendency of the initiative. In addition to amending § 33-1126, Prop. 209 amended § 33-1101 by increasing the former homestead exemption from "one hundred fifty thousand dollars" to "$400,000." However, while Prop. 209's proponents collected signatures, the legislature passed House Bill 2617 ("H.B. 2617"), increasing the homestead exemption from "one hundred fifty thousand dollars" to "$250,000." *See* 2021 Ariz. Sess. Laws ch. 368, § 3 (1st Reg. Sess.). Consequently, Prop. 209 amended an out-of-date version of § 33-1101's homestead exemption. Although the homestead exemption is not before us, and we decline to issue an advisory opinion, *see Bennett v. Brownlow*, 211 Ariz. 193, 196 ¶ 16 (2005), we note that resolution of the divergence between the legislatively approved homestead exemption and the voter-approved homestead exemption hinges on whether Prop. 209's higher value is repugnant to H.B. 2617's lower value. If the two enactments materially conflict, Prop. 209 will prevail because it is the more recent enactment. *See UNUM*, 200 Ariz. at 333 ¶ 29. Thus, application of our longstanding implicit repeal analysis, consistent with the VPA's purpose, forecloses the legislature's frustration of voter-approved measures.

¶**41** A contrary holding may result in unintended and contradictory consequences, as this case illustrates. For example, if Prop. 209 *had* repealed subsection (A)(11), expressly or implicitly, the VPA may bar the legislature from reenacting a similar tax-credit exemption. Implicit repeals, like express repeals, trigger the VPA. *See Cave Creek Unified Sch. Dist. V. Ducey*, 233 Ariz. 1, 7–8 ¶¶ 24–25 (2013). Thus, if the voters repealed subsection (A)(11), even a supermajority of legislators may be insufficient to later reenact that provision because the only permissible amendments to

a voter initiative are those that further its purposes. *See* Ariz. Const. art. 4, pt. 1, § 1(6)(C). A reenactment of a tax-credit exemption, although pro-debtor, arguably would directly contravene the purpose of the voters' purported repeal of subsection (A)(11).

## V.

**¶42** Debtor argues that Prop. 209's failure to reference subsection (A)(11) in its text violates article 4, part 2, section 14 of the Arizona Constitution ("§ 14"),[2] because it is an improper amendment by reference. *See, e.g.*, *In re Miller*, 29 Ariz. 582, 594 (1926) ("The mischief aimed at by its adoption was the common practice, still followed by the Congress of the United States, of amending the statutes by simply directing the insertion, omission, or substitution of certain words without setting out in full the act as it was intended it should be after amendment."); *State v. Fridley*, 126 Ariz. 419, 421 (App. 1980) ("This constitutional provision is designed to prevent amendments by merely striking out or adding sentences in a contextual vacuum."). We decline to address the merits of this argument as moot because it is unnecessary to answer the certified question before us. *See Sears v. Hull*, 192 Ariz. 65, 72 n.9 (1998).

## CONCLUSION

**¶43** In answering the certified question, we hold that Prop. 209's passage did not expressly or implicitly repeal subsection (A)(11). Thus, subsection (A)(11) remains operable.

---

[2] Article 4, part 2, section 14 of the Arizona Constitution provides that "[n]o Act or section thereof shall be revised or amended by mere reference to the title of such act, but the act or section as amended shall be set forth and published at full length."

MONTGOMERY, J., concurring:

**¶44**        I fully concur in the majority's analysis and conclusion.  I only write separately to underscore another issue with the dissent's application of A.R.S. § 1-245.

**¶45**        No previous interpretation of § 1-245 dealt with the scenario we face here.  Instead, all prior cases dealt with serial enactments by the same lawmaking source—the legislature.  *See, e.g.*, *Willard v. Hubbs*, 30 Ariz. 417, 423 (1926) (addressing legislative amendments to the Financial Code of 1922), *overruled on other grounds by Adams v. Bolin*, 74 Ariz. 269 (1952); *State v. Angle*, 54 Ariz. 13, 20 (1939) (noting that "a later valid act of the legislature supersedes all previous acts with which it is in conflict, whether it expressly repeals the earlier provisions or not"); *State v. Cassius*, 110 Ariz. 485, 487 (1974) (discussing subsequent acts of legislature); *Webb v. Dixon*, 104 Ariz. 473, 476 (1969) (discussing legislative enactments under Title 16 in 1933 and 1960).

**¶46**        In this case, we have the unusual scenario in which two separate, constitutionally recognized sources of lawmaking authority validly enacted laws that amended the same statute—and for all practical purposes at the same time—though not the same part of the statute.  The dissent's approach to § 1-245 would necessarily and needlessly frustrate the exercise of constitutional lawmaking authority by the legislature.  Instead, our caselaw makes clear, equally applicable in the instance of separate lawmaking authorities, that "[t]his Court . . . has a duty to harmonize statutes and will not construe a statute as repealed by implication if it can avoid doing so."  *State ex rel. Purcell v. Superior Court*, 107 Ariz. 224, 227 (1971);  *see also*, *State v. Santillanes*, 541 P.3d 1150, 1155 ¶ 16 (Ariz. 2024) (stating that "this Court has repeatedly made clear that 'repeals by implication are not favored, and will not be indulged, if there is any other reasonable construction'" (quoting *S. Pac. Co. v. Gila County*, 56 Ariz. 499, 502 (1941))).  Should such a scenario as this one present itself again in the future, parties will want to address the dissent's proffered application of § 1-245 considering our constitution's provisions for shared lawmaking authority.

BOLICK, J., joined by BRUTINEL, C.J., and BEENE, J., dissenting:

**¶47**　　　　The majority correctly observes how the situation that presents itself here is highly unusual.　We often confront conflicting, overlapping, amended, and ambiguous statutes and have adopted and applied standard rules of construction to analyze them.　But those rules are largely inapplicable under the circumstances here.

**¶48**　　　　The majority's principal emphasis is whether Proposition 209 ("Prop. 209") implicitly repealed A.R.S. § 33-1126(A)(11).　*Supra* ¶¶ 28–31. The majority acknowledges that because the proposition was crafted before subsection (A)(11) was enacted, but was adopted afterward, the drafters could not have meant to repeal subsection (A)(11) because it did not exist. *See supra* ¶ 6 ("The reason for Prop. 209's omission of subsection (A)(11) is manifest—it was drafted and circulated for signatures well before the legislature passed" the bill enacting the subsection).　The majority ultimately concludes that "Prop. 209 did not implicitly repeal subsection (A)(11)." *Supra* ¶ 31.

**¶49**　　　　This approach is problematic in at least two significant respects.　There is no question that the statute and the proposition are inconsistent: the statute provides an exemption that the proposition does not.　Prop. 209 enacted a comprehensive scheme governing bankruptcy exemptions, including ten specific personal property exemptions from debt execution.　It could have, but did not, include the exemption embodied in subsection (A)(11).　Applying the *expressio unius est exclusio alterius* canon of statutory construction, *see* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012) ("The expression of one thing implies the exclusion of others."), we would have to rewrite the proposition to include the legislative exemption.

**¶50**　　　　The cases the majority relies upon, *Territory v. Ruval*, 9 Ariz. 415 (1906), and *Arizona Downs v. Superior Court*, 128 Ariz. 73 (1981), *supra* ¶¶ 18–20, are not relevant here.　Here, Prop. 209 did not leave subsection (A)(11) "untouched," *Arizona Downs*, 128 Ariz. at 75, because as the majority fully acknowledges, subsection (A)(11) did not exist when the proposed statute was drafted.

¶51　　　　Moreover, if we green-light the legislature's ability to preemptively amend ballot measures prior to an election, we may inadvertently turn a highly uncommon situation into a tool to blunt or frustrate the effect of prospective ballot measures. We will then be faced with deciding when to give full effect to the prior statute as amended, when we will seek to harmonize the statute and the ballot measure, and when we will hold that the ballot measure implicitly invalidates the statute. *Compare Hughes v. Martin,* 203 Ariz. 165, 168 ¶¶ 14, 17 (2002) (holding that where voters enacted two ballot measures that set different terms of office for the state mine inspector, the Court should "combin[e]" and "harmonize[]" them to give effect to each), *with id.* at 169–73 ¶¶ 21–41 (Feldman, J., dissenting) (rejecting that approach); *see also State v. Arevalo*, 249 Ariz. 370, 373 ¶ 9 (2020) (observing that the Court should not rewrite statutes).

¶52　　　　Rather than following the majority's approach, we would hold that Prop. 209 supplants and supersedes subsection (A)(11) not by implicit repeal but by operation of law. The legislature itself has supplied the rule here. A.R.S. § 1-245 provides in relevant part as follows:

> When a statute has been enacted and has become a law, no other statute or law is continued in force because it is consistent with the statute enacted, but in all cases provided for by the subsequent statute, the statutes . . . theretofore in force, whether consistent or not with the provisions of the subsequent statute, unless expressly continued in force by it, shall be deemed repealed and abrogated.

¶53　　　　As this Court previously stated, § 1-245 "is a legislative codification of the generally accepted rule that a subsequent statute repeals an earlier statute, particularly if the two are in conflict or are inconsistent." *State ex rel. Morrison v. Anway*, 87 Ariz. 206, 211 (1960).

¶54　　　　Thus, although the interpretative canons the majority employs are useful where no statute controls, § 1-245 is the law and resolves the question here. Section 1-245 specifically rejects the majority's focus on the "consistency" between Prop. 209 and subsection (A)(11), and instead requires a new statute to expressly affirm the prior statute to avoid that prior statute's repeal and abrogation. Of course, Prop. 209 did not, and could not, do so.

¶55         Rather, the voters themselves have provided the mechanism for the legislature to amend statutes adopted by ballot measures, through the Voter Protection Act ("VPA"). *See supra* ¶¶ 37–41. If subsection (A)(11) furthers the purpose of Prop. 209, the legislature is empowered to adopt it so long as it complies with the requirements set forth in the VPA. As we reject the notion that the voters implicitly rejected subsection (A)(11), but instead approved a comprehensive, self-contained bankruptcy exemption statute, we disagree with the majority's assertion, *supra* ¶ 41, that the legislature would be powerless to change the voter-approved statute in a way that furthers its purposes. The majority essentially creates an end-around the VPA—so long as the legislature adopts a statute while the ballot proposition is pending, the court will "harmonize" the two by adding the statute to the measure approved by the voters.

¶56         Rather than the post hoc approach favored by the majority, § 1-245 and the VPA provide a bright-line rule: where a statute is inconsistent with a subsequent ballot measure that does not expressly preserve it, the ballot measure supersedes the statute. The prior statute can be revised through the process set forth in the VPA but not through judicial revision. Until that legislative process occurs, we should interpret and enforce Prop. 209 exactly as the voters adopted it.

¶57         For the foregoing reasons and with great respect to our colleagues, we dissent.